Minehart v. Handlin.

MINEHART V. HANDLIN.

1. BILLS AND NOTES : *When drawer entitled to notice of dishonor.*
   When the drawee, in a bill of exchange, is indebted to the drawer, or in other words, has funds of the drawer in his hands, the drawer has the right to draw, and is entitled to notice of the dishonor of the bill, though he had no expectation at the time of drawing it that it would be paid ; and default of the holder in presenting the bill for payment or in giving notice of its dishonor to the drawer will discharge him, both from the bill and the original debt for which it may be given, though it was given in discharge of the debt only if paid, and though the action be upon the debt for which it was given and not upon the bill. The want of injury or prejudice to the drawer will not excuse the holder's default in making demand or giving notice of the dishonor.

2. SAME : *Notice of dishonor, when to be given.*
   When the parties to a bill of exchange reside at different places, notice of its dishonor should be deposited in the post office in time to go by the mail of the day after the dishonor, if the mail is not closed before early and convenient business hours of that day, in which case it must be sent by the next mail thereafter ; or it may be sent by messenger or given personally, but must reach the party at furthest on the same day it would have reached him in due course of mail.

APPEAL from *Fort Smith* Circuit Court.

Hon. J. H. ROGERS, Judge.

STATEMENT.

In November, 1878, Handlin sued Minehart before a Justice of the Peace in Sebastian county, upon an account for $298.25. Minehart pleaded in defense that on the twentieth day of July, 1876, he gave to Handlin an order on J. N. Sarber for the full amount of the debt in satisfaction of it, and that Sarber was indebted to him at the time in a greater sum than the order. The Justice gave judgment against him and he appealed to the Circuit Court at Fort Smith.

Upon the trial in the Circuit Court, the evidence showed that Minehart, being indebted to Handlin in the sum sued for, gave him, on the twentieth of January, 1876, an order on J. N. Sarber for the amount; that Sarber was at the time indebted to Minehart in a larger amount than the amount of the order, and had authorized Minehart to draw the order. The order was given, Minehart says, in settlement of the account. Handlin says it was to be in discharge of the account, if paid by Sarber. A few days after it was given, Handlin presented it to Sarber for payment. He did not pay it, but informed Handlin that he owed the amount to Minehart, and if he got money from the government, which he claimed to be due him and was expecting, the order would be good, but if he did not, it would be worthless. Sarber was at the time United States Marshall of the District. He never got the money; but to the contrary, the government recovered judgment against him for a large amount, and Minehart lost the balance of what he owed him above the amount of the order. Handlin never gave Minehart any notice of the non-payment of the order until he met him in Fort Smith some three or four weeks after the dishonor of it.

The defendant asked the following instructions:

*First.* It is the duty of a creditor, who receives a draft

from his debtor on a third person, to present it to the drawee for payment and to give notice within a reasonable time to the drawer of its non-payment; and on failure to give such notice to the drawer he will be discharged from liability on the draft; and the creditor cannot, under such circumstances, maintain an action on the original debt; and if the jury find, from the evidence, that the plaintiff, in this case, received from the defendant a draft on Sarber for the amount of his indebtedness, that Sarber was indebted to the defendant at the time and the plaintiff neglected to give notice to the defendant of the non-payment of the draft within a reasonable time, they should find for the defendant.

*Second.* If the jury find from the evidence, that the plaintiff received from the defendant the draft in question in full satisfaction of his pre-existing indebtedness to him, then they should find for the defendant.

The Court refused to give these instructions, and of its own motion instructed the jury that if they found, from the evidence, that at the time of the delivery of the order by Minehart to Handlin there was no specific agreement between them that the order was to be in full satisfaction and discharge of the account, they should find for the plaintiff.

*Third.* If they found, from the evidence, that when the order was made and delivered to Handlin, that Minehart either had sufficient amount of money in Sarber's hands to pay it, or that Sarber being indebted to Minehart, in a larger amount than the order called for, Minehart had reasonable grounds to believe that it would be paid upon presentation, and that under either of these two conditions of things, Handlin took the order and failed to present it within a reasonable time for payment, or having presented it within a reasonable time and payment being refused, neglected to give defendant due notice of its non-payment they should find for the defendant. But on the other hand, if they be-

lieved from the evidence, that when the order was delivered it was understood by the parties thereto that Sarber had no money on hand to pay it, or that his ability to pay it depended upon his subsequently obtaining money from the government, or that it was not contemplated by the maker that the draft should be presented for payment and if not paid that notice should be given to him, they should find for the plaintiff.

*Fourth.* If the jury find from the evidence, that when Minehart gave Handlin the order, it was intended by him that Handlin should present the draft, and if not paid give him due notice of its non-payment, and that Handlin having taken the draft and presented it for payment failed to give due notice to Minehart of its non-payment, the verdict should be for defendant, unless Handlin show that the omission to give the notice has in no way resulted in a loss to Minehart."

The jury found for the plaintiff, and after motion for new trial overruled, the defendant filed his bill of exceptions and appealed.

*B. T. Duval*, for appellant:

The order was a Bill of Exchange, and the rights of the parties are governed by the law merchant. *Adams adr.* v. *Boyd*, 33 *Ark.*, 47.

Appellee was bound to present for acceptance and payment within a reasonable time, and give notice of dishonor within the time prescribed by law; on failure to do either, appellant was exonerated from all liability. *Ibid*, 48, 49, and cases cited.

Notice should be given by first mail. 3 *Kent.*, 105, 106; *Smith's Merchantile Law*, 328–9; *Chitty on Bills*, 325, 433–4; *Edwards on Bills*, 548–9.

Even where presentment is excused by insolvency of the

maker or acceptor, the holder should return or tender the instrument to the person from whom it was received. 2 *Am. L. C.*, 122 ; *Dayton* v. *Snell*, 23 *Wend.*, 345.

Appellee was bound to use the due diligence required by the law merchant. *Starr* v. *Kerr*, 21 *Miss.*, 191 ; *Jarmon* v. *Parker*, 7 *Mich.*, 335. .

Presentment, notice, and production of the instrument at trial, are conditions precedent to recovery on the original debt. *Dayton* v. *Snell*, *sup.*

If the creditor fails to give notice he makes the bill his own. *Byles on Bills*, 229. See also 2 *Am., L. C.*, 290, 291.

Sarber's insolvency was no excuse, for by his laches appellee made the bill his own. *Robson* v. *Oliver*, 10 *Q. B.*, 704. .

Sarber owed appellant, and had promised to pay the draft, hence appellant was entitled to notice of non-payment. *Stanton* v. *Blossom*, 14 *Mass.*, 116 ; *Campbell* v. *Pettengill*, 7 *Greenl.*, 126 ; *Hill.* v. *Norris*, 2 *Stew. & Porter*, 114 ; *Robinson* v. *Ames*, 20, *John*, 146 ; *Dunbar* v. *Tylar*, 44 *Mississippi*, 1.

*Clendenning & Sandels*, for appellee :

Having knowledge that Sarber had no funds, out of which to pay, and having no reasonable grounds to believe that the order would be paid at once, appellant was not entitled to notice. *Bickerdike* v. *Bollman*, 1 *T. R.* ; *McRea* v. *Rhodes*, 22 *Ark.*, 315 ; *Sullivan* v. *Deadman*, 23 *Ark.*, 15 ; *Edwards on Notes and Bills*, marg. p., 640. He was not injured, and if he was, the *onus* was on him to show it. *Sullivan* v. *Deadman*, *sup.* ; *Edwards on Bills*, marg. p., 397 and 491.

As to *due diligence*, see notes to *Aymar* v. *Beers*, 17 *Am.*, *Decisions*, 538.

This case is wholly different from *Adams adr.* v. *Boyd*,

33 *Ark.*, 33. That case does not touch upon our position at all.

HARRISON, J. The order on Sarber was a bill of ex- change, and as he was indebted to the defendant, or in other words, had effects of his in his hands, the defendant had the right to give it, and upon its non-payment, was entitled to notice. *Adams, Adm'r.*, v. *Boyd*, 33 *Ark.*, 33.

*1. BILLS AND NOTES When drawer entitled to notice of dishonor.*

The rule is well settled, that where the parties reside in different places, the notice should be deposited in the postoffice, in time to go by the mail of the day after the dishonor, if the mail is not closed before early and convenient business hours of that day, in which case, it must be sent by the next mail thereafter; or it may be sent by messenger, or given personally, but must reach the party, at farthest, on the same day it would have reached him in due course of mail. 2 *Dan. on Neg. Ins.*, sec. 1033, 1039.

*2. When notice to be given.*

That the defendant, when he gave the order, had really no expectation that Sarber would pay it—there was, however, no evidence of such fact—could make no difference. He had effects in his hands, and it was the duty of the payees to present it, and if not paid, give him due notice of its dishonor. The want of injury or prejudice to the drawer is not sufficient excuse for default in making demand or giving notice of dishonor. "The law requires," says Daniel, "presentment and notice as conditions precedent to the fixed liability of the drawer and endorser, not merely as an indemnity against actual injury, but as security against a possible injury, which might result from the holder's laches. It is true, that when the drawer has no funds in the drawee's hands, he can, as a general rule, suffer no injury from want of presentment or notice ; but drawing in such a case would be a fraud, and it is for that reason, rather than absence of actual injury, that presentment and notice are excused."

2 *Dan. on Neg. Ins.*, sec. 1176 ; *Staples* v. *O'Kine*, 1 *Esp.*, 332.

The suit, however, was not on the order, but on the debt. for which it was given. If it was given as absolute payment of the debt, the debt was, of course, discharged ; but if not so given, did the failure to give notice of its dishonor have that effect? The authorities conclusively show that it did. Edwards says: "When a debtor gives to his creditor a draft or bill of exchange, drawn on a third person, and it is received in full satisfaction of the debt, when paid, the person so receiving it, assumes the duty of presenting it properly, for acceptance and payment, and giving timely notice of its dishonor. Failing in either of these respects, he makes the bill his own, and it is deemed a satisfaction of the debt. So, when a merchant buys a bill of goods, and gives a bill of exchange in payment of the purchase money, the vendor cannot recover in an action for the goods, without showing that the drawer has been regularly charged on the bill. Whether the bill is received as conditional payment, or on an agreement so to apply the money, when collected, does not alter the principle ; for the duty of presenting the bill results from the nature of the security. *Edwards on Bills*, 423. And Daniel says: "So absolute is the necessity for notice to an indorser, in order to charge him, that if a note has been indorsed to the holder, in conditional payment of a debt, the failure to give notice to the indorser, will not only discharge the indorser, as a party to the note, but also as debtor upon the original consideration, even though it be secured by a mortgage or deed of trust.

The note, then, is made an absolute discharge of his liability, and the indorser must look solely to prior parties. And so in respect to a bill given in conditional payment." 2 *Dan. on Neg. Ins.*, sec. 971 ; *Gracie* v. *Sanford*, 9 *Ark.*,

233; *Adams, Adm'r.,* v. *Boyd, supra.; Dayton* v. *Trull,.*
23 *Wend.*, 345; 2 *Am. Lead. Cases*, 256.

It follows, that the court erred in its instructions to the
jury, and in refusing to give those asked by the defendant..

The judgment is reversed, and the cause remanded.