## CHAPLINE V. ATKINSON & CO.

1. STATUTE OF FRAUDS: *Promise to accept debtor's draft.*
   An agreement by a third party, to accept for a creditor his debtor's draft for the amount of his debt, stands upon the same footing as a promise to pay the debt, and must, under the Statute of Frauds, be in writing, if a promise to pay the debt should be.

2. SAME: *Promise to pay debt of another.*
   A parol promise to pay the debt of another is not within the Statute of Frauds when it arises from some new and original consideration of benefit or harm moving between the newly contracting parties.

APPEAL from *Pulaski* Circuit Court.
Hon. F. T. VAUGHAN, Circuit Judge.

*Jno. C. & C. W. England* for Appellant.

1. There is no evidence upon which the verdict could be based, and it is grossly wrong and shocking to one's sense of justice.

2. The Court erred in giving the instructions asked for plaintiffs, and in modifying the third asked by defendant.

There is no evidence that there was anything due on the September estimates, nor of any promise made to the debtors, Davis, Blythe & Co., and hence the verdict must have been based on either the second or third counts of the complaint.

The promise to pay the debt of another must be upon a good or valuable consideration and be in writing. The exceptions seem to be—

1. Where the promise is made in consideration of funds.

2. The promise made to the debtor.

3. A promise to pay a debt which is also that of the promisor, or resting upon his property.

Chapline v. Atkinson .& Co.

4. A promise based upon a new consideration moving to the promisor.

5. A promise made under a leading purpose which the promisor had in view.

For obvious reasons this case cannot fall within the exceptions Nos. 1, 2 or 3. *Hughes v. Lawson, 31 Ark., 614; Williams v. Leper, Post & Co.* There must be an *independent, a new consideration*, one not founded on the pre-existing debt. The mere forbearance to sue D., B. & Co. was not sufficient, and there is nothing to show that there were any grounds of attachment.

The first instruction for plaintiff is objectionable. *31 Ark., 614; Throop on Verb. Agr., Secs. 520–1, 524; Browne Stat. Frauds, Sec. 187; Reed, Ib., Sec. 54.* The latter clause is not law. *Throop Verb. Agr., Secs. 615, 647; Browne Stat. Fraud, (4th Ed.,) Secs. 212–14; Reed Ib., Secs. 38, 94.*

The fifth instruction for plaintiff was misleading. There was no evidence that the mortgage was given to secure the debt of plaintiffs or to indemnify defendant.

The third instruction for defendant should not have been modified by striking out " not before enjoyed." *7 Eng., 177 ; Reed Stat. Fr., Sec. 65, Note F ; Throop on Verb. Agr., Secs. 594–9, 603 ; Browne Stat. Fr. (4th Ed.), Sec. 203 et seq ; 3 Metc. (Mass.), 402 ; 100 Mass., 400 ; Reed St. Fr., Sec. 72.*

See also, *Reed St. Fr., Sec. 71 ; 50 Pa. St., 50 ; 75 Ill., 13 ; 43 N. H., 490 ; Reed St. Fr., Sec. 131 ; 5 Cush., 491 ; 52 Wis., 638 ; 124 Mass., 100 ; 108 Id., 246.*

Review the evidence and contend that there is no proof of any benefit received by Chapline, or advantage derived by virtue of the alleged promise. It was a mere collateral undertaking and within the statute. *Reed St. Fr., Sec. 131.*

*Geo. M. Chapline* for Appellant.

Whether this was an original or collateral undertaking must be determined from all the circumstances attending the transaction. *25 Ill., 331.*

There is much conflict in the decisions, but there is a tendency in the modern cases to return to the plain reading of the statute, and to construe it according to the apparent mind of the Legislature. If the mortgage was given to secure the debt due Appellees, they had no action. *59 Mass., 488; 98 Id., 296.*

The mere fact that appellant received property from the third party does not take the promise out of the statute; it must appear that he incurred a debt thereby, and not only so, but there must be an agreement that the amount of that debt shall be paid to appellees, and that it was a fund in his hands charged with the payment of that debt. *Williams v. Leper, 3 Burr., 1886; Castling v. Aubert, 2 East., 325.*

The second instruction for plaintiff is not law. The guaranty must be in writing. *Browne Stat. Fr.; Sec. 191; Throop Verb. Agr., Secs. 58, 596; 44 Mass., 396.*

The fifth instruction should not have been given. *8 Johns., 376; Burr., 1889; 98 Mass., 296; 59 Id. (5 Cush.), 488.*

It was an error to modify instruction No. 3 for defendant. *3 Metc., 396; The Reporter, Vol. xiii, p. 94, citing Clapp v. Webb, Sup. Let., Wis., Sept. 1881.*

See also *9 Cal., 328.*

*T. B. Martin* for Appellee.

This case was fairly submitted to the jury, upon proper instructions, and they found for plaintiffs; this court will not disturb the verdict unless it "shocks the sense of justice."

The evidence shows that Chapline made the promises with the hope of availing himself of the Statute of Frauds, and by his promises of preventing 'appellees from proceeding by attachment, and after he had accomplished his object, of obtaining *absolute* control over D., B. & Co.'s property used *in his work*, he says, my promises were *not* in writing, and I am not bound. The statute was never intended to aid one *to perpetrate a fraud*, and Chapline is both *legally* and *morally* bound, and so said the jury.

After the mortgage was given, plaintiffs could not have attached. *Jennings v. McIlroy, 42 Ark.*

The main and "leading purpose" of Chapline in making the promises was to subserve his own business enterprise, and does not come within the statute. *Wood on Frauds, p. 264.* If the promise is on a sufficient consideration, from which the promisor is to derive benefit, it becomes a new and independent contract between the immediate parties to it. *The benefit which the original debtor may derive is incidental and in no respect the object of the parties, and therefore ought not to affect the validity of their contract. 30 Vt., 641; 8 Johns. (N. Y.), 23; 1 Gray (Mass.), 391; Throop Verb. Agr., 563; 98 Mass., 296.*

The forbearance to sue was a sufficient consideration for the promise, and the verdict was sustained by the evidence on either the first, second or third counts.

EAKIN, J. This suit was brought by R. G. Atkinson & Co. against Chapline. They say in their complaint, that the firm of Davis, Blythe & Co. were sub-contractors under Chapline in railroad work, and owed plaintiffs a debt of $1,586.49. In order to pay that they gave plaintiffs an order on Chapline, dated October 5, 1882, directing him to pay over to plaintiffs any sum which might be due them from defendant, for any kind of work done on the railroad, and advising him that plaintiffs would re-

ceipt for the same.   On presentation of this order, on the 18th
of October, defendant endorsed on it a conditional acceptance,
to the effect, that after deducting from the estimate of Septem-
ber, what Davis, Blythe & Co. owed him and their laborers, he
would pay the balance over to the attorney for plaintiffs.   They
say that after said deductions there remained a balance on said
estimates of $1,586.49, which defendant became liable to pay.

Another count charges that defendant to avoid threatened
legal proceedings against his sub-contractors, made, in addition
to the endorsement, a verbal agreement with plaintiffs, whereby
they agreed to abandon legal proceedings and give Davis,
Blythe & Co. sixty days time, and defendant on his part agreed
to pay the claim of plaintiffs of $1,586.49, in two equal install-
ments, at thirty and sixty days, or so much of it as would not
be settled out of the September estimates.

A third count sets up the same agreement and consideration
on the part of plaintiffs, for the verbal promise of defendant,
and varies it by making his promise to pay in installments con-
ditional—provided that Davis, Blythe & Co. should execute to
him a mortgage of their tools, instruments, and property used
in working upon their contract.   It is alleged that they did
execute such a mortgage.

A fourth count sets up a promise made by defendant to
Davis, Blythe & Co. to pay their debt to plaintiffs, in consider-
ation of the mortgage as stated above, and that the mortgage
was executed.

The defendant in separate paragraphs denied that anything
remained due Davis, Blythe & Co., on the September estimates,
after paying himself and the laborers; and also that he had
made the parol agreement as alleged; or that Davis, Blythe &
Co. had ever executed to him any mortgage to secure him in
paying plaintiffs.   He further pleads the statute of frauds.

There was a trial by jury, verdict and judgment for plain-
tiffs, motion for a new trial, bill of exceptions, and appeal.

There was no proof sufficient to sustain a verdict, that the conditions had occurred upon which the draft was accepted; that is to say, that Chapline had anything left out of the September estimates, after paying himself and the laborers. If the judgment be sustained it must be on the counts setting up the parol promise of Chapline to pay the debt of Davis, Blythe & Co., by accepting two drafts at thirty and sixty days.

The evidence tends to show that Davis, Blythe & Co. owed the debt to plaintiffs. That they were sub-contractors, under Chapline, working upon a railroad; that the estimates of their work were furnished each month to Chapline, by the engineer, and were credited by Chapline on their account. That plaintiffs were about to commence proceedings upon their claim against D., B. & Co., by attachment, and went to a lawyer for that purpose. What their grounds of attachment were is not disclosed. It seems to have been taken for granted by the parties that the attachment proceedings would have been begun but for the arrangements then made. Chapline accepted conditionally a draft drawn upon him in favor of Plaintiff by D., B. & Co., and agreed by his endorsement of acceptance to pay on the same what might be left coming to them on the September estimates, after retaining what they owed himself, and a further amount due their laborers. It was afterwards developed that nothing was left in his hands to be paid on that draft. He further agreed, verbally, with Plaintiff that if D., B. & Co. would give him a mortgage on their tools and property, employed in their work, to accept for the balance of their claim, not satisfied by the September estimates, two drafts drawn by D., B. & Co., in favor of plaintiffs at thirty and sixty days. There was no express agreement for forbearance on the part of plaintiffs, or for further time to be given D., B. & Co., or that their debt should be considered as discharged, but forbearance resulted, and a jury might be authorized from the circumstances to infer that

such an agreement was implied, and that Plaintiffs rested upon that promise, and looked to it for satisfaction of their debt.

They, through their agent, at once took active steps to have the conditions fulfilled upon which the promise depended. They called upon D., B. & Co., and induced them to consent to give the mortgage, and advised Chapline of the result. He renewed the promise, and advised them to send out blank drafts for execution when the mortgage should be made. They did so, and Chapline, having in the meantime got the mortgage, declined to execute the drafts. He claimed that the object of the mortgage was to secure himself in his own debt, and that D., B. & Co., had refused to give a mortgage to indemnify him against the proposed acceptances. He took possession of all the property included in the mortgage, next day, although the debt which it professed to secure was not due, and has held the property ever since.

The debt of Plaintiffs was about $1,575. The mortgage was to secure a debt to Chapline of $2,000 in round numbers. That is, it is so expressed upon the face. There is no proof of any particular debt owing to Chapline, although it is stated generally that they were in debt to him on the estimates. One of the witnesses for Chapline says that the sum of $2,000 was fixed because it was the average of their ordinary running account. But it appears also that their estimates for work per month were that much or more.

The evidence as to some of these matters is conflicting, but this seems to be the result of its preponderance. There is much in detail which has but little bearing. It is tolerably plain that D., B. & Co., were not in debt to Chapline at the time of the September estimates; but, if anything, were entitled to credits for August work. There is nothing definite to show any considerable indebtedness subsequently.

Was the promise valid under the Statute of Frauds?

Chapline v. Atkinson & Co.

**1. STATUTE OF FRAUDS:—** Promise to accept draft.

The agreement to accept stands, with regard to the statute, on the same footing with an agreement to pay, and must be in writing if a promise to pay should have been. A leading case upon this point is *Carville v. Crane, 5 Hill (N. Y.), 483*, but it has been often recognized as sound doctrine in other cases cited by Mr. Browne in his work on Statute of Frauds, Sec. 174, *et seq.* and notes. It applies to all promises whereby the promisor agrees to put himself in such condition that he may himself be compelled to pay the debt of another.

**2. Promise to pay debt of another.**

The real question, and the only one presented, is this: Did the proof authorize the jury to find a condition of circumstances which would take this promise to accept out of the range of the Statute of frauds? There has been some conflict of decision concerning the class of cases, where, after the creation of the original debt, a third party subsequently agrees to pay the same. The difference in views has been as to what is necessary to take the case out of the Statute, and uphold a parol promise.

In *Kentz v. Adams, 12 Ark., 174,* this Court distinctly recognizes the doctrine, that a promise by a third party to pay the pre-existing debt of another, becomes an *original* undertaking, not within the Statute, where there is a new consideration, moving to the promisor from the person to whom the promise is made. This is rested upon English authorities cited in the opinion.

This doctrine was distinctly recognized and taken as well established in the case of *Hughes v. Lawson, 31 Ark., 613.* The promise therein judgment was held void for want of the new consideration. In the language of Mr. Justice Harrison, "There was no evidence of any *new consideration moving to, or inducing* the defendant to assume the debt as his own, by which the debt of Hudson (the original debtor) would have been discharged. No purpose of his own was shown to be subserved by his promise."

Chapline v. Atkinson & Co.

It may be remarked that in order to take a promise out of the Statute of Frauds, the discharge of the original debtor is a circumstance, almost, if not quite conclusive, and there is no further question as to the promise being original. It is simply novation. But it is not conclusively a collateral contract in the sense of requiring a written memorandum, because the original debtor remains bound also. *Browne on Stat. of Frauds, Sec. 212 & n. 1.*

The rule formulated from the authorities by Mr. Roberts, (*Rob. on Frauds, 232*), is that the Statute of Frauds does not attach if the consideration of the promise " Spring out of any new transaction, or move to the party promising upon some fresh and substantive ground of a personal concern to himself."

Chief Justice Kent, in *Leonard v. Vandenburgh, 8 Johns., 29*, adopted the statement of Mr. Roberts, *supra*. He divided the cases of promises to pay the debt of another into three classes: 1st. Where the guarantee is collateral to the principal contract, and is made at the same time and becomes the essential ground of the credit given. 2d. Where it is subsequent to the original debt, and not the inducement to it, though the subsisting liability is the ground of the promise, without any distinct and unconnected inducement. In this case the consideration of the original contract cannot attach to the subsequent promise, and some further consideration must be shown. To these two classes, he says, the statute applies, but not to the 3d, when the promise to pay the debt of another arises out of some new and original consideration of benefit or harm moving between the newly contracting parties. In support of this he cites the case of *Williams v. Leper, 3 Burr., 1886*, as one proceeding upon this distinction.

*When founded on new consideration, good.*

It is to be observed that this Court in the case of *Kentz v. Adams, supra*, cites this same English case in support of the doctrine, that a new and superadded consideration for the promise, distinct from the original liability, and moving between

the party promising and him to whom the promise is made, is an original and not a collateral undertaking. We are aware that the classification of such contracts, made by Chief Justice Kent, and the distinction taken between the second and third classes, has been much criticised from the bench of other States and in treatises on the Statute, but it seems to us most consonant with reason, and the fair meaning of the Statute. However, that may be, it has been the doctrine of this Court for more than two score years, without question or dissent. It is not *res nova*.

The classification of Chief Justice Kent and the principles applicable to the classes, were adopted and followed by the Supreme Court of the United States, in the case of *Emerson v. Slater, 22 How., 28*. Mr. Justice Clifford delivering the opinion, said: "Cases in which the guaranty or promise is collateral to the principal contract, but is made at the same time, and becomes an essential ground of the credit given to the principal debtor are, in general, within the Statute of Frauds. Other cases arise which also fall within the Statute, where the collateral agreement is subsequent to the execution of the debt, and was not the inducement to it; on the ground that the subsisting liability was the foundation of the promise on the part of the defendant, without any other direct and separate consideration moving between the parties. But whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself, or damage to the other contracting party, his promise is not within the Statute."

The distinction between the second and third class of cases is obvious. In the second, the main purpose and object of the promisor is to make himself a guarantor of a subsisting debt, in which case, although some new consideration is required, he is in the contemplation of the Statute, as one answering for the debt of another. In the third case he is pursuing his own busi-

ness views and seeking his own benefit, to be promoted by the promise. It becomes then like a promise to do any other act for a personal consideration, and is not within the mischief of the Statute, "although," as Mr. Justice Clifford says, "it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability. He also cites the cases of *Williams v. Leper* and *Leonard v. Vredenberg*.

The courts of Massachusetts have held the same doctrine, making the distinction to rest upon the *main purpose* of the promisor, rather than upon the effect of his promise when performed, to discharge, or not to discharge, the debt of another. It is clearly and explicitly announced by Shaw, C. J., in the case of *Nelson v. Boynton, 3 Met., 396.* In accord with that is *Alger v. Scoville, 1 Gray, 391.* Numerous other English and American decisions are cited to the same effect by Mr. Parsons in the text and notes of his work on contracts, Vol. III, pp. 24 *et seq.,* 5th edition. All this line of decisions go back and rest upon the leading case of *Williams v. Leper.* With this line Arkansas is in accord, and notwithstanding a great weight of respectable authority *contra*, which holds this third class of cases within the Statute also, and which considers the distinction of Chief Justice Kent as frittering away all the benefits of the Statute, we see no good reason to change position.

By this principle the instructions of the court, and the finding of the jury in this case are to be tested.

For plaintiffs the court instructed: 1st. That if they should find that Davis, Blythe & Co. were indebted to plaintiffs, who were proceeding to enforce their claim against them; and that defendant in consideration of a forbearance on their part to sue, promised that he would pay plaintiffs the amount of their claim, in thirty and sixty days, if Davis, Blythe & Co. would execute to them a mortgage on their property, being then used

in and about their contract, and said mortgage was so executed, substantially in pursuance of said contract; and they further believe from all the facts proven, that the transaction was one, the main purpose of which was to subserve the business and pecuniary purposes of defendant, then the contract would not be within the Statute, nor would it be required to be in writing, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability. To this instruction there was no exception saved.

2d. Against objections, the court instructed, that an agreement to forbear suit on a claim of the plaintiffs against Davis, Blythe & Co. is a valid and sufficient consideration in law to sustain a contract. This is literally correct and had some bearing on the issue, in as much as the plaintiffs must, of course, have shown a valid contract made on sufficient consideration. It does not touch the question of whether such a contract would be within the Statute of Frauds. A contract without good consideration would not be valid, whether oral or written.

3d. Against objections, the court further instructed for plaintiffs : That if they found that Chapline took the mortgage on Davis, Blythe & Co.'s property to secure the debt due plaintiffs, or to indemnify him against loss by virtue of his paying said debt, then he cannot be allowed to contend that there was no valid consideration for a promise by him to pay said debt. This also goes to the validity of the consideration, and is not upon the point of the necessity of writing. It is the law, and could not have misled an intelligent jury. It appeared from the pleadings that the promise was verbal to pay the debt of Davis, Blythe & Co., or at least, an amount to be determined by that, and the *onus* was on the plaintiffs to show two things : 1st, a contract valid in itself, and 2d, a contract of such a nature as not to be within the Statute of Frauds.

The three instructions were each pertinent to one or the other of these points.

For the defendant there was an instruction regarding the written acceptance which requires no notice.

The court declined to give an instruction numbered 3 *as asked* by defendant, to the effect, that no promise to pay the debt of another is valid, unless based upon a valid consideration and reduced to writing. Therefore, if the jury should find that the defendant promised, if plaintiffs would forbear instituting legal proceedings against Davis, Blythe & Co., and that said promise was not in writing, they would find for defendant; unless they further find that by reason of said forbearance the defendant received some benefit or advantage not before enjoyed.

This instruction was given, however, by striking out the words "not before enjoyed." We do not think that was erroneous, or that the modification was injurious to the defendant, in the light of the evidence. The main object and business purpose of a contract or promise may be to continue on a securer footing, benefits previously enjoyed, and that object may form the predominating motive for a personal undertaking. Besides the evidence is indisputable that Chapline did get a benefit and advantage from the promise not theretofore enjoyed. Through it he obtained the mortgage and full possession of property suitable to the conduct of his business. It was an advantage he very much desired, and one important to him in a business view.

4th. For defendant, the court instructed that if the jury found there had been a pre-existing debt from Davis, Blythe & Co. to plaintiff, and that defendant promised to pay it, they should find for him, unless the promise was in writing or based upon a new consideration, enuring to the benefit of defendant; and also,

5th. The mere agreement on the part of plaintiffs to for-bear legal proceedings is not a binding * * on the defendant, and is not a sufficient consideration upon which plaintiffs can base a promise on the part of defendant to pay their debt unless put in writing; and if the jury should find that defendant agreed to pay plaintiffs the amount of their debt against Davis, Blythe & Co., but that said promise was made on the sole consideration of plaintiff's agreement not to sell, they should find for defendant. This instruction was correct and prudently required to correct any possible misapprehension of the effect of the two instructions for plaintiff regarding the validity of the consideration.

Taking all the instructions together they seem to us remarkably clear, discriminating and well guarded, and to have been given under a very accurate conception, by the Hon. Circuit Judge, of the principles governing the case.

It is further urged, that the verdict cannot be supported by the evidence. It was a question for the jury to determine whether the promise to accept the drafts was prompted mainly by the motive of securing to plaintiff the payment of their debt; or whether it was made to subserve the business interests and pecuniary profits of the defendant. They might properly judge of this from all the circumstances brought to their notice, and from their general experience of human motives. Chapline was, himself, a contractor, dependent for his payment on the efficient operations of his sub-contractors. He had control of their property used in the prosecution of the work; no security for such debts as he might find it convenient to allow his contractors to make. An attachment of their property would seriously impede his business operations. He adopted the most efficient mode of averting that, by coming in and agreeing with the creditors upon something satisfactory. Through and by means of his promise he enlisted their services in procuring a mortgage, which he probably

could not have got by his own persuasions, independently of the pressure which the plaintiff could bring to bear. He at once took possession of the property and has held it since, free from all risks of attachment, and has secured himself by the mortgage in a sum which, from all that appears, is sufficient to protect him from loss, even on accepting the drafts.

If the jury concluded that this was altogether a business transaction, prompted by business motives and a calculation of pecuniary benefits to be derived from the arrangement, we cannot say there was no evidence to justify it.

We find no error in overruling the motion for a new trial. Affirm.