## BURNS *v.* YOCUM.

### Opinion delivered December 10, 1906.

1. CHECK—PRESENTATION—WAIVER.—A verbal agreement by the drawer of a check whereby he undertook to pay the check if the bank failed on presentation to make payment was not a waiver of presentation to the bank in due time.  (Page 132.)

2. SAME—TIME FOR PRESENTATION.—Where the payee of a check and the bank on which it is drawn are in the same place, reasonable diligence requires the check to be presented for payment not later than the day after it is received, and delay beyond that time without excuse will discharge the drawer from liability if he is injured by the delay.  (Page 133.)

3. SAME—PAYMENT.—Where the drawer of a check had money at the bank on which it was drawn, and the payee's agent accepted a deposit receipt of the bank in lieu of the money, and the bank failed, without paying the money, the drawer was discharged, although the cashier of the bank failed to place the deposit to the credit of such payee. (Page 133.)

4. SAME—AGREEMENT TO PAY—STATUTE OF FRAUDS.—Where the drawer of a check was discharged by the payee's acceptance of a deposit receipt in lieu of the money, a subsequent oral agreement on the former's part to pay the check, not supported by new consideration, is an agreement to pay another's debt within the statute of frauds. (Page 134.)

Appeal from Union Circuit Court; *Charles W. Smith,* Judge; reversed.

### STATEMENT BY THE COURT.

The defendant, J. R. Burns, was indebted to the plaintiff, B. E. Yocum, in the sum of $974.61 evidenced by his promissory note secured by mortgage on land, and on August 18, 1903, delivered to her his check on the Bank of El Dorado, Ark., for that sum, which she accepted, and she surrendered to him the note and mortgage.

The plaintiff's brother, George Yocum, acting as her agent, presented the check to the Bank of El Dorado for payment on August 24, 1903, about 9 o'clock A. M., and the cashier of the bank accepted the check, and executed and delivered to plaintiff's agent at the time a deposit slip, showing that plaintiff had deposited to her credit said sum in the bank. A few hours later the Bank of El Dorado closed its doors, and a receiver was on the same day appointed to take charge of its affairs as an insolvent corporation. At the time said check was drawn the defendant had sufficient funds to his credit in the bank to cover said check, and continued to have sufficient funds therein until the failure of the bank. Later in the day George Yocum went back to the bank, and delivered the deposit slip to the receiver (E. H. Smith, who was the cashier of the bank) and the latter returned the check to him. Still later during the same day Yocum re-delivered the check for collection to the receiver. Subsequently a distribution of twenty per cent. was ordered and paid on the liabilities of the bank, and that *pro rata* on the amount of said check was paid to plaintiff as a creditor of the bank. The bank proved to be insolvent, and this distribution exhausted its assets.

The plaintiff then instituted this action in the circuit court of Union County against the defendant to recover the amount of said check, with interest thereon, after deducting the amount of said *pro rata* distribution paid thereon. She alleged in her complaint that the defendant had, in order to induce her to surrender his note and mortgage and accept the check, fraudulently misrepresented to her that he had funds in the bank more than sufficient to cover the amount of said check, which was untrue, and that said check was dishonored and payment refused because he had not sufficient funds in the bank to pay the check. She also alleged that, after the appointment of the receiver for the bank, the defendant agreed with her that if she would deliver said check to the receiver for collection (which she did) he would pay the balance of the check after deducting the amount of the *pro rata* thereon when distributed and paid.

The defendant answered, setting forth the fact that he had given the check to her in payment of said note, and that he had more than sufficient funds in the bank to pay the check. He denied that he had misrepresented to plaintiff the amount of funds to his credit in the bank, or that he had made any agreement with plaintiff or her agent after the appointment of receiver and surrender of the deposit slip with reference to his payment to plaintiff of the balance of the check after deducting the amount of the distributive payment, and he also pleaded the statute of frauds against said alleged agreement, and that it was entered into, if at all, without any consideration.

The plaintiff and her brother, George Yocum, testified that when defendant gave her the check she expressed to defendant some doubt about the solvency of the bank, and that the latter said to her: "Miss Bobbie, I have plenty more money, and if it fails before you get it (meaning the amount of the check) I will give you every cent of it." George Yocum also testified that, after he had received the deposit slip and returned later and exchanged it with the receiver for the check, the defendant made the following promise or statement to him: "George, every cent that bank don't pay, your sister sha'n't lose a cent."

The testimony of this witness with reference to the deposit of the check is as follows:

Q. "Why did you take a deposit slip?"

A.  "I was going to transfer it to Camden; she told me to deposit it and transfer it to the National Bank at Camden."

Q.  "That is why you deposited the money in the Bank of El Dorado and took a deposit slip for it?"

A.  "Yes, sir.  I was going to Camden the next Tuesday morning to draw it.  She said she wanted to put it there where I did business, and it would be safe."

Q.  "You did not raise any question about this matter, or about this deposit, or about this check until after the bank had failed?"

A.  "No, I did not have any intention to; I just walked over here to the clerk's office before I knew it."

Q.  "You never raised any question?"

A.  "No, I did not; I did not have time.  I thought everything looked kind o'spotted that morning."

Q.  "Then why did you deposit your money in the bank and take a deposit slip for it?"

A.  "I was going to transfer it to Camden."

E. H. Smith testified that he received the check as cashier of the bank, and gave a deposit slip for the amount, in the usual course of business, but that the amount was not transferred to plaintiff's credit on the books of the bank for the reason that it was the custom to post up the books after banking hours, and that the receiver was appointed and the bank suspended business on that day before the close of banking hours.

The court, at the request of the plaintiff and over the objection of defendant, gave the following instructions, viz.:

"No.  1.  The jury are instructed that if they believe from all the evidence in this case that the check of the defendant on the Bank of El Dorado was accepted by the plaintiff on condition at the time that the money on said check would be paid by said bank of El Dorado, and you further find that said check was not paid by said bank, then in such event your verdict will be for the plaintiff, although you may find that a deposit slip was issued by E. H. Smith, the cashier of said bank, to the plaintiff, provided you further find that said deposit slip was returned by E. H. Smith and the amount of the check never credited on the books of the bank to the plaintiff, nor charged by said bank to the account of the defendant.

"2. The jury are instructed that if they believe from all the evidence in this case that it was agreed at the time of the delivery of the check by the defendant and plaintiff, and was a condition of the check by the plaintiff, that if same should not be paid by the Bank of El Dorado the defendant would pay said indebtedness, and you further find that said check was not paid by the bank and credited on its books to the account of the plaintiff, then your verdict will be for the plaintiff."

The court also instructed the jury, at the request of defendant, as follows:

"No 3. You are instructed that, even though you believe from the evidence that after the deposit of the check drawn by J. R. Burns to Yocum was made in the Bank of El Dorado, and a deposit certificate issued therefor by the Bank of El Dorado to the plaintiff, and after the failure of said bank, the defendant, J. R. Burns, agreed to pay all of said amount sued on which the Bank of El Dorado should not pay, still, if you believe that such agreement was without any valuable consideration passing from the plaintiff to the defendant, then you must find for the defendant.

"No. 4. You are instructed that a bare threat to sue a person or agreement not to sue will not of itself be sufficient consideration upon which to base an oral or written contract, unless there was at the time some obligation due from the party agreeing to the party accepting the agreement which would be accepted in law.

"No. 5. That a party receiving a check in payment of a debt is bound to present the check for payment within a reasonable time, and the party receiving the check is not warranted in holding the check without presentation merely to suit her convenience, but that she must have used reasonable exertions to present the check, or the maker of the check will be absolved from liability upon the original debt."

The court refused to instruct the jury, as requested by defendant, that the alleged agreement of defendant after the surrender of the check to pay the balance after crediting the distributive share received from the defunct bank, must, to bind him, have been in writing.

The jury returned a verdict in favor of plaintiff for the

amount claimed. Judgment was rendered accordingly, and the defendant appealed.

*Marsh & Flenniken,* for appellant.

1. Appellant's act in depositing money in the bank after he drew the check proves his faith in its solvency, and fraud will not be presumed. 68 Ark. 261; 34 Ark. 419; 63 Ark. 16; 11 Ark. 378. See, also, 27 L. R. A. 248.

2. If a debtor gives his creditor his check on a bank in which he has deposited sufficient money to pay the same, and the creditor, on presenting the check to the bank, accepts, in lieu of cash, a deposit slip, the debt is discharged, and the bank becomes debtor to the payee for the amount of the check so deposited. 53 Ark. 116; 46 Ark. 537.

3. If appellant agreed to pay such part of the check as the bank should fail to pay, this agreement, being oral, was within the statute of frauds, and not enforcible. Kirby's Digest, § 3654; 12 Ark. 174; 45 Ark. 67; 31 Ark. 613; 52 Ark. 174.

4. Appellee ought not to recover because of her own negligence in presenting the check for payment. 5 Cyc. 532; 44 L. R. A. 397.

5. The court erred in admitting testimony to show that Smith returned to Yocum the check and took up the deposit certificate after the former had been appointed receiver for the bank. 170 Ill. 82; 5 Cyc. 602; 27 Kan. 707.

McCULLOCH, J., (after stating the facts.) In the trial of this case below the parties ignored some of the issues presented by the pleadings, and introduced proof directed to other issues. There being no objection to this, the court treated the pleadings as amended to conform to the proof.

The plaintiff introduced no testimony tending to establish the allegations of the complaint that the defendant had no funds in bank to pay the check and misrepresented that fact to induce plaintiff to accept the check in payment of the note.

The court, in the instructions given at the request of plaintiff, based the defendant's liability upon his alleged promise, when he delivered the check to plaintiff, to pay it in the event of the failure of the bank to pay on presentation, and on the fact that when the check was received by the cashier of the bank and

the deposit slip issued to plaintiff the amount was not passed to her credit on the books of the bank. These instructions assumed that defendant's alleged promise to pay the amount in the event of the failure of the bank to pay on presentation of the check was a waiver of presentation for payment within a reasonable time, and made him liable for the failure of the bank to pay at any time. They also assumed that the check was not paid by the bank by issuance of the deposit slip, because the amount was not credited to plaintiff on the books of the bank. The instructions were erroneous for these reasons. The promise of the defendant to pay the amount in the event of the failure of the bank to pay on presentation of the check added nothing to his obligation, and was not a waiver of his right to have the check promptly presented by the plaintiff. "A check, like a bill of exchange, must be presented for payment within a reasonable time, and what is a reasonable time will depend upon the circumstances of the particular case. In the absence of special circumstances excusing delay, the reasonable time for presenting a check, where the person receiving the same and the bank on which it is drawn are in the same place, is not later than the next business day after it is received; and where they are in different places, reasonable diligence requires the check to be forwarded to the place of payment not later than the next business day after it is received by the payee, and presented not later than the day after it is there received. Inexcusable delay will discharge * * * the drawer from liability if he is injured by the delay." 7 Cyc. pp. 977-979; Same, pp. 531, 532; Tiedeman on Com. Paper, § 443; *Minehart* v. *Handlin,* 37 Ark. 276; *Morris* v. *Eufaula Nat. Bank,* 122 Ala. 580; *Kilpatrick* v. *Home B. & L. Assoc.,* 119 Pa. St. 30; *Hamlin* v. *Simpson,* 105 Iowa, 125, 44 L. R. A. 397; *Anderson* v. *Rodgers,* 53 Kansas, 542, 27 L. R. A. 248.

In this case there was a delay of five days (excluding Sunday) in presenting the check for payment, and no excuse for the delay is shown to have existed. This was sufficient to discharge the drawer when presentation within a reasonable time was not waived. An unreasonable delay taken by the drawer for his own convenience in presentation of the check is at his own risk.

The plaintiff's acceptance of the deposit slip or receipt, which turned out to be worthless, instead of demanding the cash

in payment of the check, placed the loss upon the plaintiff as a result of the negligence of her agent in so doing. *Loth* v. *Mothner,* 53 Ark. 116; *O'Leary* v. *Abeles,* 68 Ark. 259, and cases cited.

It is immaterial that the cashier or other employees of the bank did not place the deposit to the credit of plaintiff on the books of the bank. The surrender of the check and acceptance of the deposit receipt, instead of demanding the cash, was an election to accept payment in that way.

The oral agreement alleged to have been entered into by appellant after the deposit of the check is void under the statute of frauds because not supported by a new consideration. *Kurtz* v. *Adams,* 12 Ark. 174; *Hughes* v. *Lawson,* 31 Ark. 613; *Chapline* v. *Atkinson,* 45 Ark. 67; *Killough* v. *Payne,* 52 Ark. 174.

The instructions of the court were erroneous, and the verdict is not sustained by the evidence. So the judgment is reversed, and the cause remanded for a new trial.