## ROSENBAUM & MENDEL v. AARON THOMAS.

Western Section.  July 31, 1928.

No petition for Certiorari was filed.

James H. Malone and Sam Taubenblatt, of Memphis, for appellant.
Chas. M. Bryan, Arthur G. Brode and Blan R. Maxwell, of Memphis, for appellee.

SENTER, J. The complainant sued the defendant in the chancery court of Shelby county on an account in the sum of $2,130 for merchandise consisting of articles of furniture.

The answer admits that the merchandise was sold and delivered by complainant to defendant aggregating the sum of $2,154.75, less a credit allowance of $24.75, leaving the net balance $2,130. The answer denies that the defendant is indebted for said merchandise, claiming that the account had been fully paid. The facts may be briefly summarized and stated as follows: On Saturday, December 4, 1926, H. H. Brooks, who was then connected with the firm of Rosenbaum & Mendel, which firm was owned entirely by I. Mendel, called at the home of defendant in Memphis for the purpose of collecting the account. There was some complaint as to the condition of one of the articles of merchandise sold, a table, and the credit allowance of $24.75 was agreed to between the parties. The defendant then contended that if he paid the account at that time he should be allowed the usual two per cent. discount. After some discussion on this subject, Brooks agreed to the two per cent discount allowance and the defendant gave to Brooks his personal check payable to Rosenbaum & Mendel for the amount of the account less the two per cent. discount, and Brooks accepted the check and marked the bill "Paid". The check was drawn on the American Savings Bank & Trust Co., of Memphis. There is some conflict in the evidence as to the exact time that Brooks received the check from Thomas, it being contended by Thomas and members of his family that it was at about 11:30 o'clock in the morning, and by Mr. Brooks that it was about ten minutes to twelve. However, in the view of the case we have taken, and as taken by the Chancellor, this difference in the time does not become especially material.

It also appears that during the conversation between Brooks and Thomas at and before the check was delivered to Brooks by Thomas, that there was some conversation concerning an alleged shortage in the accounts of one of the employees of the American Savings Bank, amounting to about $106,000. It is insisted for appellant that appellant directed Brooks to present the check promptly for payment at the American Savings Bank on account of the alleged shortage of one of the bank's employees. It appears that this shortage was generally known and an account of the alleged shortage was carried in the morning papers of Memphis. It also appears that both Brooks and Thomas expressed confidence in the solvency of the bank. Brooks denies that Thomas directed him to present the check to the bank on which it was drawn immediately. It also appears that it is the custom of all the banks in Memphis to close at twelve o'clock on Saturdays. Brooks did not go by the bank and present the check for payment, but went directly to the place of business of complainant and turned the check over to the cashier of complainant. It was two miles or more from where Thomas lived to the American Savings Bank and about the same distance to the place of business of complainant.

Brooks was driving an automobile, and according to the statement of the cashier and of Brooks, it was 12:10 o'clock p. m. when Brooks reached complainant's place of business. He drove directly from the Thomas home, without stopping, to complainant's place of business. All banks in the city of Memphis closed promptly at twelve o'clock, except banks which had savings accounts, and they remained open only to receive savings deposits until about 8 p. m. on Saturdays, but for the transaction of no other business. On Monday morning, December 6, the cashier of complainant deposited this check in the Fidelity Bank & Trust Company, the bank with which complainant did its banking business. It appears that the check was then passed through the Memphis Clearing House in the usual way and manner by the Fidelity Bank & Trust Co. It appears that the American Savings Bank & Trust Co. closed its doors for business and did not open on Tuesday morning, December 7, and this check was turned back by the clearance house to the Fidelity Bank & Trust Co. because of the failure of the American Savings Bank to open its doors for business on December 7, the date it was closed for liquidation. The American Savings Bank was open for business on Saturday, December 4, until twelve o'clock noon, it also opened at the regular time on Monday, December 6, and remained open during banking hours of December 6, and did not open for business after banking hours on December 6.

The Chancellor held that under the facts the complainant exercised reasonable and proper diligence, and that the account remained unpaid in whole or in part, and sustained complainant's bill, decreeing a judgment in favor of complainant for the amount of the account, and the costs of the cause. From this decree complainant excepted and prayed an appeal to this court.

Appellant has assigned four errors. The first is to the action of the court in holding that the acceptance by complainant of the check of Thomas and receipting of the bill as paid, was not an unconditional payment of the account sued on. Under this assignment of error it is the insistance of appellant that the acceptance of the check was an absolute and not a conditional payment. Appellant has cited several cases in support of the contention that it is a question of fact, whether under all the facts and circumstances the delivery and acceptance of a check in payment of an account constitutes an unconditional payment or a conditional payment. (Andrews v. German N. Bank, 9 Heisk., 211; Briggs v. Holmes, 118 Pa. St., 283; Blair v. Hodge, 28 Gratt., 165 (Va).

Without reviewing the cases cited, the general rule on the subject is to the effect that it is generally presumed to be only a conditional payment of the debt for which the check is given. In the last case cited by appellant in the brief, above referred to, it is said:

"While the giving of a check by a debtor to a creditor is generally presumed to be only a provisional or conditional payment of the debt for which it is given, yet such check may by agreement of the parties, be given and received in full payment and absolute discharge and satisfaction of the debt; and whether it was so given and received is a question of fact for the jury."

There is no evidence in the record that the check was received under an agreement between the parties that it was accepted as an unconditional payment of the account. The very contention of Thomas that he directed Brooks to present the check for payment at once, negatives the idea that it was understood between the parties that the check was given and accepted as an unconditional payment of the account. This assignment cannot be sustained and is accordingly overruled.

The second assignment of error will be considered in connection with the fourth assignment. Under the second and fourth assignments it is said that the court erred in holding that Thomas was not released as drawer of the check on account of complainant's failure to present it on December 4, 1926, the date of its receipt, or on the following Monday; and in holding that complainant was not put upon notice that American Savings Bank & Trust Co., the drawee, was in a precarious or doubtful financial condition, and warned by defendant to present the check for payment at once; and not having presented it on Saturday, December 4, or on the following Monday, December 6, but waiting and not presenting it for payment until Tuesday, December 7, after the bank had closed its doors, that these facts operated to release Thomas as drawer of said check. Under these assignments of error the insistance is made, first, that complainant having been warned by defendant that the drawee bank was in doubtful financial condition, the agent of complainant, Brooks, should have taken the check directly to the drawee bank and presented it for payment on December 4, 1926, and that Brooks had sufficient time after receiving the check in which to drive the two or more miles and present the check before the noon hour. We do not find that the record sustains the contention that the defendant warned Brooks that the drawee bank was in serious financial condition, or that he directed Brooks to present the check for payment immediately. While there was some discussion between Brooks and Thomas with reference to the alleged shortage of one of the employees of the bank, they both expressed confidence in the solvency of the bank. Thomas had several thousand dollars on deposit in the American Savings Bank & Trust Co. If he had entertained any serious doubts as to the solvency of this bank he certainly would have withdrawn his deposits on December 4. The second insistence of appellant under these assignments is to the effect that in any event this check should have been presented for payment on December 6, while the bank was still open for business, at the latest, and that this is true under the general rule of the law

merchant, since all the parties were residents of Memphis where was located the bank on which the check was drawn. Many authorities are cited by appellant in the excellent brief to support its contention on this question. (Schoolfield & H. v. Moon, 9 Heisk., 171; Andrews v. German N. Bank, 9 Heisk., 211; Kirkpatrick v. Puryear, 93 Tenn., 409; 2 Daniels on Neg. Inst., (5 Ed.) Sec. 1590; 2 Morse on Banking, (5 Ed.) Sec. 421.)

In Schoolfield v. Moon, supra, it is said:

"When the holder of a check sues the drawer, if the drawer, the drawee and the payee live in the same place, the drawer is liable if the check be presented for payment within the business hours of the next day after it is drawn. This is a settled rule of commercial law applicable to the holder of bank checks." (Citing 2 Parsons on Bills and Notes, 72; Chitty on Bills, 385).

"The check is an appropriation, as between the drawer and the holder, to the latter of so much money in the banker's hands. The holder of the check may allow the money to remain in the banker's hands and the drawer cannot complain, unless he is injured thereby, but the risk of allowing the money to remain in the banker's hands, after the check is drawn, rests upon the holder of the check."

The other Tennessee cases of Andrews v. Bank and Kirkpatrick v. Puryear are to the same effect.

Mr. Daniels, in Vol. 2 on his work on negotiable instruments, 5 Ed., Sec. 1590, page 611, states the rule as follows:

"Where the payee to whom the check is delivered by the drawer, resides in the same place where the bank on which it is drawn is located, he may preserve recourse against the drawer, by presenting it for payment at any time before the close of banking hours on the next day (by which is meant the next secular day), for if he receive it on Saturday, he has until the close of banking hours on Monday to present it; and if in the meantime the bank fails, the loss will be the drawers."

In 2 Morse on Banking (5 Ed.), Sec. 421, the rule is thus stated:

"In the absence of agreement or special circumstances it is the right of the drawer of a check to expect it to be presented for payment, at latest, within banking hours on the day following the day of its delivery to the payee, if the bank on which it is drawn be in the same place where the payee lives or does business . . ."

The Chancellor, in his opinion filed with the record, refers to the Tennessee cases hereinbefore referred to, and then cites the Uniform Negotiable Instrument Law now in force in Tennessee, and quotes from section 186 thereof as follows:

"A check must be presented for payment within a reasonable time after its issue or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay".

The learned Chancellor was of the opinion that the Tennessee cases holding to the one day rule after the delivery of the check, which appears to be the general rule prior to the enactment of the Uniform Negotiable Instrument Law, were cases decided under the rule of the law merchant, and prior to the passage in Tennessee of the Uniform Negotiable Instrument Law.

We are of the opinion that the provision contained in section 186 of the Uniform Negotiable Instrument Law, is in effect, declaratory of the common law or the law merchant, and that the words "within a reasonable time", should be construed to mean within a reasonable time after the check is received under all the facts and circumstances and recognized banking usage and custom. Clearing houses are of comparatively recent origin in the development of banking in the various cities of the states where there are numerous banks located in the same city. The clearing house is intended to facilitate banking and commercial business. The importance and necessity for the banks of a city to employ the clearing house as an agency for the uniform and the convenient method of obtaining daily settlements of balances between the various banks, is obvious, and has become a recognized institution and custom. Usually and customarily the clearing house of member banks in a city is charged with the duty to clear or balance daily the claims of the respective banks, one against the other, resulting from the checks drawn upon the banks and held by the different members. Business and commercial institutions of a city receive the checks of customers and patrons, and it is the general custom to deposit the checks so received by a business concern with the bank with which it carries its banking account, whether the checks are drawn on that bank or other banks, and these checks are deposited for collection, and if they are not paid by the bank on which the same may be drawn, they are charged back to the account of the customer depositing same for collection. It is also the general custom of the banks to pass all such checks through the local clearing house. This facilitates banking business.

It is clearly the duty of the bank with which a check drawn on another bank in the same city has been deposited for collection to promptly pass the same through the clearing house. The result, ordinarily, would be that if a check so deposited by the customer of the bank drawn on another bank in the city, the passing of the check through the clearance house would operate to delay actual presentation to the bank on which it is drawn to the day following. If the clearing house is not used as a medium and the check so deposited by the customer for collection would ordinarily be presented at the counter of the bank on which the check is drawn on the day that the

same is deposited with it for collection. But if the check is passed through the clearing house, to be cleared in the usual and ordinary manner, it cannot be cleared until the following day.

It appears in this case that complainant having received the check in question after banking hours on December 4, deposited the same with its own bank on the next secular day, Monday morning, and that its bank in turn passed it to the clearing house for clearance. The check was not therefore presented for payment at the counter of the drawee bank on December 6, and the drawee bank did not open for business on December 7. The question for determination, therefore, is whether the payee of the check through the agencies employed, acted with reasonable diligence in having the check presented for payment.

This question is very fully discussed in the case of Federal Land Bank v. Goodman, (Ark. 1927), reported in 292 S. W., 659, and in which case it is said by the Ark. Court:

"The appellant contends, first, that if the holder of a check and the bank on which it is drawn reside in the same place, the check must be presented for payment not later than the day after its receipt. This presents the only real controversy in the case. The authorities cited by appellant while announcing this rule, state that it is not absolute, and that the holder of the check must use due diligence in presenting a check for payment. The authorities cited also hold that if a bank fails, after the holder, using due diligence, could have gotten the money on the check, the loss is his. Both parties agree that this question should be determined or decided under the laws of the State of Tennessee. The law with reference to this matter in the State of Tennessee is the same, however, as in Arkansas, as both statutes provide in substance that a check must be presented within a reasonable time after its issue."

In the same case, after referring to and quoting from the Arkansas case of Burns v. Yocum, 81 Ark., 127, 98 S. W., 956, proceeds to say:

"The above case was decided in 1906 before we had any uniform instrument law in Arkansas. The court in that case, however, as we have said, recognized the rule that all that was required of the holder of the check was to present it in a reasonable time, and that a reasonable time depended upon the circumstances of each case. It may be said that what is a reasonable time in any case depends on the circumstances of that particular case, and means such time as a prudent man would exercise or employ about his own affairs. It, of course, does not mean indulgence in unnecessary delay on the one hand, nor does it mean he is to act without any regard to the circumstances, and conveniences of transacting business of that kind. It is whatever time that is

necessary to conveniently do what should be done in the particular case. . . ."

"Since the establishment of clearing house associations, and especially in cities as large as Memphis it would be very inconvenient, if not practically impossible, for each person who received a check drawn on a bank in Memphis to present it to the particular bank upon which it was drawn. It would very greatly interfere with business, and due diligence does not require this. In a New York case it has been said: 'This usage of trade and business in presenting checks for payment has become incorporated into the banking system of the state and country, and would be seriously affected if immediate presentment to the paying bank were required. Bearing in mind the general commercial law, that the paying bank is required to satisfactorily identify the payee, and bearing in mind also, from the vast number of checks daily used in the city of New York, it is apparent that if the banks and trust companies of New York were required immediately upon their receipt to present deposited checks to the banks upon which they are drawn for payment, confusion amounting to almost chaos would result. A rule which required all banks in the city of New York to present for payment all the checks deposited by their customers on the day of their deposit would compel them to decline business of that character, and defeat the objects in many cases for which deposits are made, and put an end to certain facilities which result from obtaining credit for the amount of a check for the day of its deposit without providing for its payment until the following morning." (Zaloom v. Ganin, 139 N. Y. S., p. 85).

After quoting from the New York case above the Arkansas court commented further on the opinion in the Zaloom (New York) case, as follows:

"What is said about the business of New York is also true of Memphis, Tennessee, except in a different degree, but it would certainly be very inconvenient and a great interference with business, as it is conducted today, to require one to go to the bank on which the check is drawn instead of depositing it as the appellee did in this case. . . ."

This question was also before the Supreme Court of Idaho in the case of Bistline v. Benting, 228 Paci., 309, where it is said by the court:

"It has been held that, when a check has been received after banking hours, deposited by the payee with his own bank on the next day, and presented by that bank to the drawee bank or the clearing house on the following day, the presentment is within

a reasonable time as required by the statute. We approve the above rule which properly recognizes the general business custom of depositing checks in the payee's bank for collection, instead of presenting them in person to the drawee bank. Since no deposit or presentment can be made after banking hours, the day the check is received should not be counted if it is received after banking hours.''

As above set forth in this opinion we must recognize the established custom of handling commercial transactions such as this through the modern facilities which now obtain in all cities of sufficient size and importance to employ the clearing house system by banks. It is shown by the record that it is the usual and general custom of a customer to deposit checks in their own bank, even when the checks are drawn on other banks in the same city, and the bank receiving such check for deposit employs the facilities offered by the clearing house in making the collection. It is evident that the Uniform Negotiable Instruments Law was passed in the various states in recognition of the demands of business and banking for a uniform system and uniformity in laws on the subject. The Uniform Negotiable Instruments Law, as enacted by the various states, meets modern business methods. Section 186 (Shannon's Code, 3516a194), of the Uniform Negotiable Instruments Law does not undertake to state with exactness the date or time for presenting a check for payment after it is received. It simply provides that the check must be presented for payment within a reasonable time after its issue, else the drawer will be discharged from liability thereon to the extent of the loss caused by the delay. By this provision of the law the question of what time would be a reasonable time is left to the peculiar facts and circumstances of the particular case. It must be assumed that the respective legislative bodies of the various states which adopted or passed the Uniform Negotiable Instruments Law had in mind modern business methods generally used in handling checks or other commercial paper, and must have had in mind that in populous cities with a large number of banks, that a clearing association was formed by the banks and this medium customarily and generally used by the banks of the city in handling checks deposited by the customer with his own bank drawn on another bank in the same city.

A reasonable time, would be the usual time in which checks are generally handled where the same are passed through the clearing house for clearance. If this rule should be adopted, then the facts of this case would bring it within the rule of the usual and customary manner of handling checks through the clearing house.

We are of the opinion that the Chancellor reached the correct conclusion in holding and decreeing that there was no unusual delay in the handling of this particular check, and in sustaining complainant's bill.

It results that all assignments of error are overruled and the decree of the Chancellor is affirmed. Appellant and sureties on the appeal bond will pay the cost of this appeal.

Owen and Heiskell, JJ., concur.