S. H. RANDALL v. VICTORIE EICHHORN and Others.[1]

June 27, 1900.

Nos. 12,093—(115).

**Mortgage—Payment to Loan Agent—Evidence.**

Certain loan agents were authorized by defendants E. to procure for them a new mortgage of $600, to take up prior mortgages of $500 and $100. They were authorized by plaintiff to make a loan for him to that amount. Defendants B. and L. were the owners of the prior mortgage of $500. The new mortgage was executed by defendants E. to plaintiff, and

[1] Reported in 83 N. W. 154.

the agents charged plaintiff upon their books with $600, and credited defendant L. with $500, but the money had not been forwarded when the agents made an assignment. *Held*, that the evidence supports a finding that the $500 mortgage was paid.

Action in the district court for Hennepin county to foreclose a mortgage. The case was tried before Elliott, J., who found in favor of plaintiff. From an order denying a motion for a new trial, defendants appealed. Affirmed.

*J. D. Shearer* and *C. D. Gould*, for appellants.

*Fred W. Reed* and *Edward F. Waite*, for respondent.

LEWIS, J.

The plaintiff brought this action to foreclose a mortgage of $600 executed by defendants Eichhorn. The answer of defendants Bailey and Lowe alleged that plaintiff's mortgage was made without consideration, and that defendants Eichhorn had executed to J. L. Mason, administrator of the Bailey estate, a prior mortgage of $500 upon the same premises of which defendant Bailey, as administratrix, had become owner, and in which defendant Lowe, as heir, had an interest. The trial resulted in an order for judgment for plaintiff, and defendants appealed from an order denying a new trial.

The appeal presents only one question requiring notice, and that is whether the $500 mortgage was paid at the time plaintiff's mortgage was executed. The court found that the $500 mortgage was paid on or about March 19, 1896, and we are of the opinion that the finding is supported by the evidence. The consideration of this question leads to an examination of the evidence as to the authority of the now famous firm of A. F. & L. E. Kelley to collect the Bailey $500 mortgage debt. It will not be advisable to refer in detail to all of the evidence bearing upon that point.

It appears from the record that J. L. Mason, administrator of the estate of J. Warren Bailey, deceased, of Vermont, had for some years prior to his death, in 1889, made mortgage loans for that estate through the Kelleys, who were loan agents at Minneapolis, Minnesota. The heirs of the estate are defendant Harriet Bailey, the wife of the deceased and administratrix, and two daughters,

defendants Ella M. Bailey and Clara B. Lowe. During the long course of dealing between the Kelleys and Mr. Mason, their authority seems to have been almost unlimited. They passed upon securities, collected, and remitted without reference to special mortgages or notes, and attended to the insurance and taxes upon the property covered by the loans. They were accustomed to collect money due the estate when the notes had not been received. A general account was kept with Mason upon their books, and collections were often credited to the estate without remittance until a new loan was made. This method of doing business was to some extent continued with the defendants individually after Mason's death. Some of the loans were carried on the Kelleys' books in the name of the different heirs, and correspondence conducted directly with each one in reference thereto, and the husband of defendant Lowe, as her agent, directed the Kelleys to collect all the mortgages as they became due, and in 1894 forwarded a number of coupons to them for collection, including the interest coupon then due on the note in question. It also appears that the $500 mortgage had been extended twice by direct authority of defendant Lowe, and that interest on the same had been from time to time collected by them and forwarded to her, and that remittances were made by the check of the Kelleys upon their own account.

We will now consider the evidence in reference to the payment of the mortgage debt. The last extension of this note expired about March 16, 1896. It does not appear where the note was at that time. It was claimed by defendants to have been lost while in their possession, and the Kelleys claimed to have had it in their possession in 1893, but it could not be found at the time of the trial, and, as before stated, it had been extended twice. It also appears that there was a second mortgage for $100 on the same premises, known as the "Baker mortgage," which also matured about the same time. On March 16, 1896, the Kelleys notified defendant Eichhorn that both mortgages were due and must be paid. Thereupon defendants employed one Peterson to arrange for a settlement or extension. The result of Peterson's negotiations with the Kelleys was that a new mortgage for $600 to take up the old mortgages was made out to plaintiff upon the same premises, and defendants Eich-

horn paid $60 for interest and commission, and executed the new mortgage in the Kelleys' office on March 18, 1896, and it was recorded the next day, and forwarded to plaintiff, who was at once charged with the $600, and defendant Lowe was credited with $500, and Baker credited with $100, on the Kelleys' books. A satisfaction of the Baker mortgage was received and recorded, and upon notice defendant Lowe forwarded to the Kelleys the $500 mortgage and a satisfaction, but before they were received and recorded the Kelleys made an assignment for the benefit of their creditors. Defendants Eichhorn now contend that they never authorized the Kelleys to make up a new mortgage for them, and that they only wanted an extension of the old ones, and supposed that was what had been done. We do not think it necessary to consider this claim. There is certainly no evidence which would warrant any such conclusion.

Without further reference to the record, we are satisfied that the finding complained of is fully sustained by the evidence. The Kelleys had authority to collect the note at its maturity. They did not collect the cash from defendants, but changed the mortgage over to plaintiff, and gave the defendants credit upon their books for that amount, which is the same thing in effect. This question has been fully considered and settled upon very much the same state of facts in Hare v. Bailey, 73 Minn. 409, 76 N. W. 213.

It is claimed, however, that because the Kelleys were insolvent at the time, and their bank account was overdrawn, the process of charging and crediting was of no effect. In our opinion, it is immaterial whether they were solvent or insolvent; whether they had funds in the bank, or their account was overdrawn. The decision in Hare v. Bailey, supra, does not depend upon the fact that the money of Dean was placed in the bank to his credit, and was actually there at the time the amount of the Hare mortgage was credited to Bailey. What is said in that connection in the opinion is by way of illustration. For whom were the Kelleys acting when they charged plaintiff and credited defendant Lowe? They were acting for plaintiff in making the loan for him, and his money was in their possession for that purpose. They were acting for the Eichhorns in procuring an arrangement which would renew the old mortgages. They were acting for defendants Lowe and Bailey in collecting the

first mortgage lien debt.    There was nothing inconsistent in these several positions.    Their work was completed as to plaintiff and the Eichhorns, except that the first mortgage satisfaction had not been placed on record.    It was completed with defendants Lowe and Bailey up to the point where the Kelleys became their debtors to the amount of the mortgage.    Authority to establish this relation of debtor and creditor by a general account between them had been given expressly or impliedly, and it is no fault of plaintiff that these defendants did not receive their money.

We will further note that defendant Lowe had recognized the authority of the Kelleys to deal with her directly in reference to the mortgage debt, hence she cannot now question the fact that the credit was given to her on the books instead of to the real owners, of which she was one.

The testimony as to the payment of $350 was properly stricken out, for the reason that it was not proper cross-examination.    It further appeared that it was not the best evidence, and no issue was made on that point.

Order affirmed.