CITY NATIONAL BANK v. CITIZENS' BANK OF PETTIGREW.

Opinion delivered January 24, 1927.

1. BANKS AND BANKING—ACCEPTANCE OF CHECK.—The general rule is that, where a check is offered and accepted by the drawee bank as a deposit, credited to the holder's account and charged to the account of the drawer, the transaction is closed and cannot be rescinded or recalled except for fraud or mistake.

2. CONTRACTS—FRAUD OR MISTAKE.—In equity fraud or mistake vitiates every transaction.

3. BANKS AND BANKING—MISTAKE IN ACCEPTING CHECK.—Where a bank forwarding a check for collection suffered no loss by reason of the drawee bank mistakenly crediting the forwarding bank's account therewith, the drawee bank, on discovering the same day that the drawer had no funds to meet the check, had a right to correct the mistake by notifying the forwarding bank.

4.  BILLS AND NOTES—ACCEPTANCE OF CHECK.—There can be no
acceptance of a check by delivery to the bank on which the check
is drawn until the draft passes through the books of the bank,
charging the drawer's account and crediting the account of the
remitting bank and making a complete transaction.

Appeal from Washington Chancery Court; *Lee
Seamster,* Chancellor; reversed.

### STATEMENT OF FACTS.

So far as the issues raised by the appeal in this case
are concerned, this is a suit in equity by the Citizens'
Bank of Pettigrew against the City National Bank to
recover the sum of $1,000, the amount of a draft drawn
on the defendant in favor of the plaintiff and alleged to
have been accepted by the defendant. The suit is
defended on the ground that the drawer of the draft had
no funds in the defendant's bank with which to pay it,
and that the acceptance of the defendant was made under
a mistake of fact.

The record shows that, on November 10, 1923, the
Citizens' Bank of Pettigrew, in Madison County,
Arkansas, mailed at Pettigrew to the City National Bank
of Fort Smith, Arkansas, the following draft:

"The Farmers' State Bank

Oklahoma City, Okla., Nov. 6, 1923.

"Pay to the order of Citizens' Bank ($1,000) one
thousand dollars for value received, and charge to
account of R. J. Conneway.

"To City National Bank,

"Fort Smith, Arkansas."

November 11 was Sunday, and November 12
became Armistice day, and a holiday. When the City
National Bank opened for business on Tuesday, November 13, the draft had arrived. One of the clerks in the
bank mailed on the same day a postal card to the
Citizens' Bank of Pettigrew, which is as follows:

"The City National Bank, Fort Smith, Ark., November 13, 1923.   Your letter of 11 received.

We credit your account.....................................................$1,000

We entered for collection..............................................

We debit your account....................................................

"Checks and drafts on other points credited subject to payment.

"Yours truly,

"The City National Bank."

The account of R. J. Conneway was also charged with the sum of $1,000 by another clerk.   The attention of the cashier of the City National Bank was called to the matter later in the day of the 13th inst., and he examined the account of Conneway to see if he had any funds in the bank.   Finding that Conneway had no funds in the bank, he directed the draft to be at once returned to the Citizens' Bank of Pettigrew.   This direction was given before the close of banking hours, but it seems that the letter returning the draft was not received by the Citizens' Bank of Pettigrew until November 15, 1923. The advice-card or acceptance copied above was received by the Citizens' Bank of Pettigrew on November 14, 1923.

According to the testimony of the cashier of the City National Bank, Conneway was not a regular customer of the bank, but had borrowed money from it on one occasion previously and had deposited some collateral security with the bank.   The amount so borrowed was due and unpaid at the time of the transaction in question, and the collateral was still in the hands of the City National Bank.   The draft and the notice of nonpayment were dated November 15, but this was a mistake of the stenographer, and the actual date was November 13. The direction of the cashier to return the draft with notice of nonpayment was made during banking hours, but too late to be forwarded to the Bank of Pettigrew on that day.

The Citizens' Bank of Pettigrew refused to accept the return of the draft, on the ground that the postal card received by it, above referred to, was an absolute accept-

ance of the check, and was not merely an advice-card showing the receipt of the draft, as claimed by the Citizens' National Bank. R. J. Conneway had been connected with the Citizens' Bank of Pettigrew, and that bank knew that he had no funds on deposit in the City National Bank at the time the draft in question was drawn, but it expected that Conneway would be in Fort Smith on November 12, 1923, and arrange for the payment of the draft. Conneway had returned from Oklahoma, and was in the Citizens' Bank of Pettigrew on the day the card of acceptance or advice was received, which was November 14, 1923. The Citizens' Bank of Pettigrew, as soon as it received the postal card in question, treated it as an acceptance or payment of the draft, and made an entry in its books crediting the account of R. J. Conneway with $1,000. The draft was given by Conneway to the bank in payment of an antecedent indebtedness, and it is not shown that the Citizens' Bank of Pettigrew will in any wise be injured if the postal card in question is not treated as an absolute acceptance and payment of the draft.

The chancellor found the issues in favor of the plaintiff, and rendered a decree in favor of the Citizens' Bank of Pettigrew against the City National Bank of Fort Smith in the sum of $1,000. To reverse that decree this appeal has been prosecuted by the City National Bank.

*James B. McDonough,* for appellant.

*W. N. Ivie,* for appellee.

HART, J., (after stating the facts). Michie, in his treatise on Banks and Banking, vol. 2, § 141 (1c), lays down the general rule governing cases of this sort as follows:

"Where a check is offered and received by the drawee bank as a deposit, credited to the holder's account, and charged to the account of the drawer, the transaction is irrevocably closed and cannot be rescinded or recalled by the bank or the drawer without the consent of the person to whom payment was made, except for fraud or mistake "

The general rule proceeds upon the theory that, when a bank accepts a check or draft on itself, by depositing to the credit of the person presenting it the amount of the check, it is presumed to know whether the check at that time is good or not, and, if it unconditionally accepts it, it cannot thereafter repudiate it in this respect. The general rule has been recognized and followed by this court. *Burns* v. *Yocum,* 81 Ark. 127, 98 S. W. 956; and *Sanders* v. *W. B. Worthen Co.,* 122 Ark. 104, 182 S. W. 549.

In *American National Bank* v. *Miller,* 185 Fed. 338, the Circuit Court of Appeals, Sixth Circuit, lays down the rule to be that, where a check was offered and received by the drawee bank as a deposit, credited to the depositor's account and charged to the account of the drawer, the transaction constituted complete payment of the check and could not be rescinded except for fraud or mutual mistake.

This case was appealed to the Supreme Court of the United States and the judgment affirmed in 229 U. S. 517, under the style of the *American National Bank* v. *Miller.* Mr. Justice Lamar, who delivered the opinion of the court, in discussing the subject said:

"There are some disadvantages of sending a check for collection directly to the bank on which it is drawn, but, when such bank performs the dual function of collecting and crediting, the transaction is closed, and, in the absence of fraud or mutual mistake, is equivalent to payment in usual course. *National Bank* v. *Burkhart,* 100 U. S. 686, 689."

We are of the opinion that the exceptions recognized in the cases just cited are in accord with the holding of this court on the subject. In *Arkansas Trust & Banking Co.* v. *Bishop,* 119 Ark. 373, 178 S. W. 422, the court said:

"The only question in this case for the decision of the jury was whether the bank accepted the check and became liable for the payment of the amount for which it issued its deposit slip to the drawee thereof. The

intention of the parties to the transaction could properly have been shown for the determination of this question, and, the bank having issued its regular deposit slip or ticket for the amount of the check to the drawee thereof, the burden rested upon it to show that it was not in payment of the check.''

Again, in *Sanders* v. *W. B. Worthen Co.,* 122 Ark. 104, 182 S. W. 549, the court said:

''When a check is taken to a bank and the bank receives it and places the amount to the credit of the customer, the title to the check is vested in the bank. The rule as stated is not an absolute rule, but it is *prima facie* merely, and yields to the intention of the parties, express or implied, from the circumstances.''

It is a well recognized doctrine of equity jurisprudence that fraud or mistake vitiates every transaction. It is evident that, if the bank acted through a mistake of fact in making the acceptance, it should not be bound thereby, unless the other party suffered some loss on account of its act in making the acceptance.

In the case at bar no loss was suffered by the Bank of Pettigrew. It knew that Conneway had drawn the draft in its favor in payment of an antecedent indebtedness and that he had no funds in the City National Bank at that time with which to meet it. It also knew that he intended to go to the City National Bank at Fort Smith by the 12th of November and make arrangements for the payment of the draft. Conneway was in the bank when the postcard copied in our statement of facts was received. The Citizens' Bank of Pettigrew did not ask him if he had made arrangements to pay the draft with the City National Bank, but credited his account with the amount of the draft. In doing so, the Bank of Pettigrew treated the postcard as an absolute acceptance instead of a card advising it that the draft had been received by the City National Bank. It is true that the card, on its face, is an absolute acceptance, but, according to the testimony of the cashier of the City National

Bank, it was not intended as such, but was only intended to be a notification that the bank had received the draft.

It is also true that the bookkeeper credited the account of Conneway with the sum of $1,000, the face value of the draft, on the day that it was received, but, according to the testimony of the cashier of the bank, this was done through mistake. On account of the two previous days being holidays, an accumulation of business had come through the mails, and the routine work of the bank was being done hastily on Tuesday, which was the day the draft was received and on which the transactions with regard to it were had by the City National Bank. As soon as the cashier discovered that this had been done, he examined Conneway's account to see if he had any funds on deposit with which to pay the draft. Finding that he had none, he directed the item to be charged off of the books of the bank and that the Bank of Pettigrew be notified that the draft was returned to it because the drawer had no funds with which to pay it. This was done during banking hours on the day of the 13th of November, the day it was credited, although the letter notifying the Citizens' Bank of Pettigrew that the draft was returned for nonpayment for want of funds was dated November 15. The cashier of the City National Bank, however, testified that was due to a mistake of the stenographer, and that the letter was directed to be sent on the 13th, although the mistake was discovered too late for it to be mailed on the train going to Pettigrew on that day.

The City National Bank acted in the dual capacity of collecting agent of the Citizens' Bank of Pettigrew, the holder of the draft, and as drawee. In such case there can be no acceptance by delivery until the draft passes through the books of the bank, charging the account of the drawer and crediting the account of the remitting bank, and making a complete transaction. *First National Bank of Murfreesboro* v. *First National Bank of Nashville,* 154 S. W. 965.

Under the circumstances of this case, it is evident that the City National Bank charged the amount of the draft to the account of Conneway in the hurry of the day, which was caused by the accumulation of business on account of the two previous days being holidays, and that there was no intention to .treat the transaction as completed until the close of the day's business.

The postal card was not intended to be an absolute acceptance, but was only intended by the bank to be a card advising the Citizens' Bank of Pettigrew that the draft had been received. No loss was. suffered by the Citizens' Bank of Pettigrew on account of the transaction.

The result of our views is that the City National Bank never intended to treat the transaction as a completed one and that it had a right to correct the mistake when it discovered, on the same day, that Conneway had no funds in the bank with which to meet the draft. The Citizens' Bank of Pettigrew, having been promptly notified and having suffered no loss on account of the mistake, is in no position to claim that the facts of this case did not bring it within the exception that the acceptance was made under a mistake of fact. It follows that the decree must be reversed, and, inasmuch as the case of the plaintiff seems to have been fully developed, its cause of action will be dismissed here.