**222**

NORTHWESTERN NAT. BANK OF MINNEAPOLIS, MINN., Appellant, v. REED, et al, Respondents.

(220 N. W. 509.)

(File No. 5728.   Opinion filed July 14, 1928.)

*Koon, Whelan & Hempstead,* of Minneapolis, Minn.; and *Doherty & Talbott,* of Winner, for Appellant.

*Charles A. Davis,* of Burke, and *W. J. Hooper,* of Gregory, for Respondents.

BROWN, J. This action is on a note for $5,400, dated October 12, 1921, due November 15, 1921, made by the defendant Arthur Reed, payable to the order of L. S. Lillibridge at the First National Bank at Spencer, Neb. The note was transferred by Lillibridge in due course to Woods Credit Company and by it to plaintiff. It was given in renewal of an earlier one secured by chattel mortgage, dated April 6, 1921, and due October 12th of that year, of which also plaintiff had become the holder in due course, and which was retained as collateral to the renewal note. The defense is payment.

F. W. Woods was president of the First National Bank of Spencer, hereinafter designated the Spencer Bank, and also president of Woods Credit Company. The Credit Company seems to have been to some extent an auxiliary of the bank, and had its office in the bank building, in a room connected by an archway with the bank business room.

Lillibridge was president of Burke State Bank at Burke, S. D., which is about 25 miles from Spencer by rail, and there is daily communication by mail between the two towns. The Spencer bank for about 12 years prior to its failure on July 13, 1922, was correspondent bank for Burke State Bank.

When the note sued on fell due, negotiations for a loan of $6,500 from the War Finance Corporation were in progress by Burke State Bank or Lillibridge on behalf of Reed. The loan was obtained on February 24, 1922. Reed told Lillibridge to pay the note in suit out of it, and on that day a deposit slip was given to Reed by Burke State Bank showing that he had deposited $6,500, less the amount due on that note, and some other items, leaving a net deposit to his credit of $923.16. On the same day Burke State Bank credited the Spencer Bank on its Books with the

amount due on the Reed note, $5,506.05, and directed the Spencer bank or its president, Woods, to debit or charge the account of Burke State Bank with that amount and return the note when canceled. The amount of the Reed note, however, was not charged out of the account of Burke State Bank in the Spencer bank on the books of the latter bank until April 8th, and the note was not returned. On June 8, 1922, the cashier of the Spencer bank drew a cashier's check for the amount in favor of plaintiff, but this check was never delivered to plaintiff. While the note was payable at the Spencer bank, it was never in possession of that bank after plaintiff became the owner of it.

Lillibridge testified that on January 15, 1922, he had a conversation with W. E. Briggs, vice president of plaintiff at its bank in Minneapolis, in regard to the note in suit, in which conversation he told Briggs that they were negotiating for a loan from the War Finance Corporation and expected that they would soon be able to pay the Reed note, and asked Mr. Briggs if it would be all right to send the money to Mr. Woods at Spencer, to which Mr. Briggs responded, in substance, that would be all right, the payment could be made there, and defendants would get the notes from the Spencer bank after the money was sent there.

Briggs, testifying as to this conversation, denied emphatically that he said payment might be made at Spencer or that he would send the notes there to be turned over when the money was paid. He testified that nothing whatever was said by either him or Lillibridge about making payment at Spencer.

At the close of all the evidence, plaintiff moved for a directed verdict on the ground that, even conceding payment to the Spencer bank was authorized, yet the crediting of that bank on the books of Burke State Bank with the amount due on the note and the charging of the Burke State Bank on the books of the First National Bank of Spencer with that amount did not constitute payment, that an agent to receive payment could only accept cash unless authorized by the principal to accept something else, and there was no evidence that plaintiff had authorized the Spencer Bank to accept the order on itself to take the amount due on the note out of the account of the Burke State Bank.

This motion was denied, and the case was submitted to the jury on instructions which charged in substance that the burden

of proof was on the defendants to show by a fair preponderance of the evidence that plaintiff in the conversation between Briggs and Lillibridge at Minneapolis had expressly authorized Lillibridge to make payment to the Spencer bank, and that unless they found such express authority conferred in that conversation, payment to the Spencer bank would not constitute payment of the notes, and their verdict must be for plaintiff for the amount due on the notes; but if they should find that in that conversation plaintiff expressly authorized Lillibridge to make payment to the Spencer bank, their verdict should be for defendants. The jury found for defendants, and from a judgment on the verdict and an order denying a new trial, plaintiff appeals.

There are 34 assignments of error, but in the view we take of the case there is but one question before this court for consideration, namely, whether the crediting of the Spencer bank on the books of Burke State Bank with the amount due on the note, and the charging of the amount out of the account of Burke State Bank in the Spencer bank on April 8th, 1922, pursuant to the previous direction of Lillibridge constitutes payment of the notes. The verdict of the jury is conclusive upon this court that the plaintiff, in the conversation between Briggs and Lillibridge at the bank in Minneapolis, authorized payment of the notes to be made to the Spencer bank, and if payment was made there the notes were discharged, even though they were not in possession of the bank when payment was made, and have remained in possession of plaintiff ever since.

The act of charging the amount of the note out of the account of Burke State Bank in the Spencer bank shows that there was at least that amount in such account at that time, and, as solvency is presumed in absence of proof to the contrary (Hale v. Gullick, 13 S. D. 637, 84 N. W. 196), and the Spencer bank continued as a going concern for more than three months after April 8th, it must be presumed that it had sufficient funds to pay plaintiff the amount of the note at the time it charged that amount out of the account of Burke State Bank. The situation then is this: Reed deposited in Burke State Bank sufficient money for the purpose, and directed Burke State Bank to pay the note; that bank, having sufficient funds in the Spencer bank, which was authorized to receive payment of the note, directed the Spencer bank

to deduct from its account the amount due on the note, which the Spencer bank did, but failed to remit the proceeds to the Minneapolis bank. The payment was in all respects as complete as if Lillibridge with $5,506.05 in cash had gone to Spencer and there paid it over to the Spencer bank, or as if Lillibridge had gone to Spencer without any money and there had written a check for the amount and signed it "Burke State Bank" by himself as president, passed it over the counter of the Spencer bank, received the money on it, and then had passed that identical money back across the counter to the officer of the Spencer bank who had paid it to him. Had he taken either of the latter two methods there could be no question but the note would have been paid. But modern business does not contemplate such unusual and cumbrous methods of making payments.

In Baldwin's Bank v. Smith, 215 N. Y. 76, 109 N. E. 138, L. R. A. 1918F, 1089, Ann. Cas. 1917A, 500, where the holder of a note payable at a bank where the maker had funds on deposit sent it there for collection, and the maker verbally directed the bank to pay it out of his account, and the bank, having sufficient funds to pay it, charged the amount of the note out of the account of the maker as directed, but did not remit to the owner, and failed seven days afterwards, it was held that deducting of the amount of the note from the maker's account, as directed by him, constituted a payment of the note to the bank, and that on the failure of the bank before remitting to the owner the loss fell on the owner. We think that under the rule in that case, the note in the instant case must be held to have been paid on April 8th.

A number of exceptions are taken to the refusal of the court to give certain requested instructions, but the charge as given was more favorable to plaintiff than as requested. The refusal to give such instructions was not prejudicial to plaintiff. Plaintiff also objected to the admission of certain letters, and of a claim filed by plaintiff with the receiver against the Spencer bank for the amount of the cashier's check above referred to, as a preferred claim. We think all of the documents objected to were admissible as bearing upon the single question whether or not the plaintiff in the conversation between Briggs and Lillibridge at the bank in Minneapolis on January 15th authorized payment to be made at the Spencer bank. Exhibit D, one of the documents objected to,

was a long letter dated December 8, 1921, written by plaintiff to the president of the Spencer bank, complaining of failure to pay notes that had been transferred or rediscounted to plaintiff, and intimating that the Spencer bank had been imprudently managed and conducted, one short extract from the letter being, "If the notes we hold are a fair sample of your bills receivable, I fear your condition is hopeless." The admission of this letter could clearly not be prejudicial, but rather advantageous, to plaintiff. The fact that plaintiff on December 8, 1921, was criticizing the business capacity of the Spencer bank and complaining that no payments were being made on paper taken by plaintiff in reliance upon the indorsement of the president of that bank would tend to prove that it was unlikely that plaintiff would make the Spencer bank its agent to receive payment on its behalf of $5,506.05 six weeks later.

Plaintiff contends that a verdict should have been directed in its favor because Lillibridge did not notify plaintiff of the payment to the Spencer bank; that the bank statements and reconcilements between the Spencer bank and the Burke State Bank showed that the amount of the note was not charged out in either the February or March statements; therefore Lillibridge must be presumed to have known that while he had directed the amount of the note to be deducted from Burke State Bank account, this had not been done, and that it was his duty to see that the money was transmitted to plaintiff, and the loss ought to fall on defendants on the principle that where one of two innocent parties must suffer, the one through whose negligence it occurred must stand the loss. This principle could not apply if Lillibridge had express authority to make payment to the Spencer bank, and the verdict of the jury is conclusive on that point.

The judgment and order appealed from are affirmed.

POLLEY and SHERWOOD, JJ., concur.

CAMPBELL, J., dissents.

BURCH, P. J., not sitting.