(No. 5049.   March 28, 1929.)

W. M. DAVISON, Respondent, v. C. E. ALLEN, Appellant.

[276 Pac. 43.]

Walter Griffiths, for Appellant.

Rice and Bicknell and Ernest Anderson, for Respondent.

GIVENS, J.—November 11, 1926, appellant, living in Wilder, purchased at Wilder from respondent, living in Caldwell, certain hogs and gave at Wilder in part payment thereof, a check in favor of respondent on the First National Bank of Wilder. Appellant failed to sign this check which omission was at the time overlooked by both parties. Respondent thereafter deposited the check with the Parma National Bank at Parma which bank discovered the lack of the signature and sent the check direct to the Wilder Bank which was proper (1921 Sess. Laws, 361, chap. 165, sec. 1; 1925 Sess. Laws, 231, chap. 133, sec. 93), with, after describing the check, etc., this advice on the collection sheet:

"Gentlemen: Enclosed find for collection and remittance as below. . . . . Do not hold for convenience of party. Deliver documents only on payment. Report by no. or return this letter. . . . . Please procure Mr. Allen's signature—when paid remit to First Nat. Bk. of Idaho, Boise, for our credit.''

There was uncontradicted testimony that the collection sent on November 12th should have reached Wilder on the 13th. On the morning of the 16th Mr. Allen received notice from the Wilder Bank to come in and sign the check which he did on that morning and handed the check back to the bank. The Wilder Bank did not charge appellant's account nor credit respondent; in fact, did nothing further with the check except to keep the check in its possession until the 19th.

The Wilder Bank failed to open for business on the 18th. On that day the cashier of the Parma Bank went to the Wilder Bank and demanded payment of the check which was refused. The check was returned to him and he then demanded payment of appellant which appellant declined to make. The respondent later paid the amount of the check to the Parma Bank but never received payment of the check in question from the Wilder Bank or appellant; hence this action by respondent to recover the amount of the check from appellant resulting in a judgment in favor of respondent from which this appeal was taken. Appellant at all times between the 11th and the 18th had more than sufficient funds in the Wilder Bank to pay the check.

The Wilder Bank was to do four things: 1st, to procure Mr. Allen's signature to the check; 2d, to present it for payment to itself (*Federal Reserve Bank v. Peters,* 139 Va. 45, 42 A. L. R. 742, 123 S. E. 379, at 382); 3d, to collect it, which involved as the opposite but concomitant and simultaneous act, payment by itself as debtor of appellant to itself as collection agent for respondent; and 4th, to remit to respondent. Such dual and instantaneous change of duty is recognized and is, of course, apparent from a con-

templation of the transaction where the rights of the parties are kept clearly in mind. (*City National Bank v. Citizens' Bank,* 172 Ark. 624, 290 S. W. 48, at 51; *In re Schanke & Co.,* 201 Iowa, 678, 207 N. W. 756, at 760; *Exchange Bank v. Sutton Bank,* 78 Md. 577, 28 Atl. 563, 23 L. R. A. 173; *First National Bank v. First National Bank,* 127 Tenn. 205, 154 S. W. 965, at 967.)

■■■■ The Wilder Bank fully performed its duty in the first respect and any failure to act more promptly in securing appellant's signature was waived by him since he signed on the 16th and, of course, knew at that time that until then the check was not complete, had not been properly presented, collected, paid or remittance made to respondent. (*Lipten v. Columbia Trust Co.,* 194 App. Div. 384, 185 N. Y. Supp. 198, at 202.) In effect, on that day, he gave a valid check to respondent which was then presented. (*Phillips v. Cunningham,* 148 Tenn. 164, 253 S. W. 354.) So whether respondent should have done other than he did in having the check sent to the Wilder Bank to procure appellant's signature is of no moment. The Wilder Bank, while sustaining to appellant the relation of debtor to creditor as to his deposit, because his funds on deposit were the bank's funds and not appellant's, nevertheless was charged with a duty to him to the extent that it was under obligation to pay out, on his orders or checks, his funds deposited in the bank. (*Erb v. Banco di Napoli,* 243 N. Y. 45, 50 A. L. R. 1009, 152 N. E. 460; *Guthrie National Bank v. Gill,* 6 Okl. 560, 54 Pac. 434.)

C. S., sec. 5928, provides as follows:

"The drawer by drawing the instrument admits the existence of the payee and his then capacity to endorse, *and engages that on due presentment the instrument will be accepted or paid, or both,* according to its tenor, and that if it be dishonored, and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder or to any subsequent indorser who may be compelled to pay it. But the drawer may insert in the instrument an

express stipulation negativing or limiting his own liability to the holder.'' (Italics ours.)

In *Blackwell v. Fergus Motor Co.*, 80 Mont. 374, 260 Pac. 734, the court said:

''When a customer of a bank issues a check thereon, and delivers it to his creditor, rather than withdrawing the amount and paying the creditor, the check is not given as payment of the amount due, but with the implied promise that he will pay the amount if the bank does not do so. (*Peninsula National Bank v. Hans Pederson Construction Co.*, 91 Wash. 621, 158 Pac. 245; *First Nat. Bank v. First Nat. Bank*, 127 Tenn. 205, 154 S. W. 965; *Usher v. Tucker Co.*, 217 Mass. 441, 105 N. E. 360, L. R. A. 1916F, 826.)

''It is said that the maker of a check guarantees that the bank on which it is drawn is solvent (*Lester-Whitney Shoe Co. v. Oliver*, 1 Ga. App. 244, 58 S. E. 212); at least he evinces a belief in the solvency of the bank, and voluntarily takes the risk of delay in the mail and of loss through the insolvency of the bank during the reasonable period necessary for its presentment in the usual manner. (*Lewis, Hubbard & Co. v. Montgomery Supply Co.*, 59 W. Va. 75, 52 S. E. 1017, 4 L. R. A., N. S., 132.)''

Discussing the same question in the case of *Jensen v. Laurel Meat Co.*, 71 Mont. 582, 230 Pac. 1081, the Montana court said:

''The meat company did not discharge its obligations to Jensen by delivering to him its check, for a 'check is merely an order for money and in the absence of any agreement to the contrary, its acceptance in discharge of an indebtedness is conditional upon its payment.' (*United States National Bank v. Shupak*, 54 Mont. 542, 172 Pac. 324.)''

See, also, *Lipten v. Columbia Trust Co., supra.*

Payment is the completed act which discharges the instrument and ends its life. C. S., sec. 5986, provides:

''A negotiable instrument is discharged:

''1. By payment in due course by or on behalf of the principal debtor.

"2. By payment in due course by the party accommodated, where the instrument is made or accepted for accommodation.

"3. By the intentional cancellation thereof by the holder.

"4. By any other act which will discharge a simple contract for the payment of money.

"5. When the principal debtor becomes the holder of the instrument at or after maturity in his own right."

This question is considered in *American National Bank v. Miller*, 185 Fed. 338, and also in *Illinois Trust & Savings Bank v. Northern Bank & Trust Co.*, 292 Ill. 11, 126 N. E. 533, at 534, thus:

"When a bank on which a check is drawn performs the dual function of collecting and crediting, the transaction is closed, and in the absence of fraud or mutual mistake is equivalent to the payment in usual course."

See, also, *American National Bank v. Miller*, 229 U. S. 517, 33 Sup. Ct. 883, 57 L. ed. 1310; *Montgomery County v. Cochran*, 126 Fed. 456; *Consolidated National Bank v. First Nat. Bank*, 129 App. Div. 538, 114 N. Y. Supp. 308; *Rodgers v. Farmers' Bank* (Tex. Civ. App.), 264 S. W. 491, 493–495.

Appellant relies on *Baldwin's Bank of Penn Yan v. Smith*, 215 N. Y. 76, Ann. Cas. 1917A, 500, 109 N. E. 138, L. R. A. 1918F, 1089, among others, as holding that the check has been paid. The court therein, however, recognized the necessity of some act evidencing intention to pay and held the acquiescence by the bank in the verbal instruction given it by the maker of the note (the court for the purposes of the case considered there was no difference as to the question here involved between a note and a check) sufficient to show the bank's intention.

We have found no case which holds mere receipt, and retention by the drawee bank of the check without charging it to the depositor's account, sufficient to prove payment, and several cases construing the Baldwin Bank case recite that such occurred in the main case; their theory of the facts is in this respect incorrect, but it shows that

the basis of their conclusion of payment is charging the depositor's account, an element totally lacking herein.

In *Northwestern Bank v. Reed* (S. D.), 220 N. W. 509, at 511, the court, discussing this question, said:

"In *Baldwin's Bank v. Smith*, 215 N. Y. 76, Ann. Cas. 1917A, 500, 109 N. E. 138, L. R. A. 1918F, 1089, where the holder of a note payable at a bank where the maker had funds on deposit, sent it there for collection, and the maker verbally directed the bank to pay it out of his account, and the bank, having sufficient funds to pay it, charged the amount of the note out of the account of the maker as directed, but did not remit to the owner, and failed seven days afterward, it was held that deducting of the amount of the note from the maker's account as directed by him, constituted a payment of the note to the bank, and that on the failure of the bank before remitting to the owner the loss fell on the owner. We think that under the rule in that case, the note in the instant case must be held to have been paid on April 8th."

In *In re Schanke & Co.*, 201 Iowa, 678, 207 N. W. 756, at 760, the court said:

"We think that, in the case of a common agent for both parties, as here, there must be, not only a receipt of the money on account of the debtor, but there must be an application of it upon the debt or an appropriation to the creditor's account or for his benefit before it can be said that the agent holds the money as agent for the creditor, or that the creditor is paid. (*Phillips v. Mayer,* 7 Cal. 81; *Wilson v. Wilson,* 17 Ohio St. 150, 91 Am. Dec. 125; *Hatch v. Hutchinson,* 64 Ark. 119, 40 S. W. 578; *Thigpen v. Arant,* 213 Ala. 516, 105 So. 644; *Moore v. Norman,* 52 Minn. 83, 38 Am. St. 526, 53 N. W. 809, 18 L. R. A. 359; *Miller v. Byrd,* 26 Ga. App. 307, 106 S. E. 192.)

"In the cases cited on behalf of Anderson, there had been such an appropriation or application: *Randall v. Eichhorn,* 80 Minn. 344, 83 N. W. 154; *Bailey v. Anderson,* 75 Minn. 49, 77 N. W. 414; *Belk v. Capital Fire Ins. Co.,* 100 Neb. 260, 159 N. W. 260; *Pochin v. Knoebel,* 63 Neb. 768, 89

N. W. 264; *Baldwin's Bank v. Smith, supra.* The appropriation may be implied but we find no foundation for finding that there had been any implied application or appropriation. We are constrained to hold on this record that the mortgage held by the American National Bank has not been paid."

The cashier of the Wilder Bank testified positively, and he is not contradicted, that he did not pay the check. The question of payment is a question of fact. (*Cosmopolitan Trust Co. v. Leonard Watch Co.,* 249 Mass. 14, 143 N. E. 827.)

The drawee owes a duty to the drawer, not the payee, to pay the drawer's check. (*Holloway v. First National Bank,* 45 Ida. 746, 265 Pac. 699; *National Bank of N. J. v. Berrall,* 70 N. J. L. 757, 103 Am. St. 821, 1 Ann. Cas. 630, 58 Atl. 189, 66 L. R. A. 599; *Lipten v. Columbia Trust Co., supra.*)

When the Wilder Bank closed its doors, this check had not been charged to appellant's account.

The Wilder Bank, before it could receive as collecting agent for the Parma Bank, had to pay as appellant's debtor. It could not collect until in its other capacity as drawee it had paid and that is where the action stopped, so that the fatal negligence or breach of duty in this case consisted of a failure to pay. See the dissenting opinion in *Baldwin's Bank v. Smith,* 215 N. Y. 76, 86, 109 N. E. 138, at 141. The correct rule is thus stated in *First National Bank v. First National Bank,* 127 Tenn. 205, 154 S. W. 965, at 968: "Where the drawee is acting in the dual capacity of collecting agent of the holder and as drawee, there can be no acceptance by delivery until the bills are passed through the books of the bank, charging the account of the drawer and crediting the account of the remitting bank, and making a completed transaction."

In *First National Bank v. National Park Bank,* 100 Misc. Rep. 31, 165 N. Y. Supp. 15, at 16, the court said:

"By charging the account of the trust company with this check, the same has been paid, nothing more was left to be done, and the plaintiff was entitled to receive the proceeds

of the check. As was said in *Nineteenth Ward Bank v. South Weymouth Bank*, 184 Mass. 52, 67 N. E. 671: 'By those acts there had been set apart and appropriated to the payment of the note so much of the deposit then standing to the credit of the makers as was sufficient for that purpose.'

"As was said by Mr. Justice Miller in *Baldwin's Bank v. Smith, supra:* 'All that is necessary to constitute payment is the intention to make the application, which may be evidenced in a variety of ways, e. g., by bookkeeping entries, by canceling the note and surrendering it to the makers, by the drawing of a check by the makers and its acceptance in payment by the bank.' "

In *Hunt v. Security State Bank*, 91 Or. 362, 179 Pac. 248, at 251, the court said:

"When Hunt ordered the defendant not to pay the check, the bank had done nothing more than to satisfy itself that the check was genuine, and that there was sufficient funds to pay it, and to stamp it 'Paid,' and to place it upon the spindle. All this was merely preparing to pay, it was simply a step towards payment; it was not payment. No entry was made on the books. The drawer was not charged; the holder was not credited. It may be assumed that the bank intended to make appropriate entries on its books and to remit; but we are confronted with a situation where the bank had not yet executed its intention. An intention to pay is not payment. What the bank did was done in contemplation of payment; but payment was not completed."

See, also, *Shapleigh Hardware Co. v. Crews*, 124 Okl. 247, 255 Pac. 696; *American National Bank v. Miller, supra; Capital Grain Co. v. Federal Reserve Bank*, 3 Fed. (2d) 614 at 617; *Illinois Trust & Savings Bank v. Northern Bank & Trust Co., supra; Rodgers v. Farmers' Bank* (Tex. Civ. App.), 264 S. W. 491, at 493–495.

Appellant contends that respondent and the Wilder Bank handled the matter as though presenting an account to appellant for payment and that when he handed the check in as payment on the 16th, the account was paid though the

check was not. The fallacy in this argument is this: conceding the check was received by respondent as payment for the hogs, he received it with the understanding written into the check by C. S., sec. 5928, that the check would be paid. So this account sent for collection was not payment for the hogs but the collection sent was the check, and of course the check did not pay itself. Until the check was paid, it remained unpaid. The law did not require the money to be passed out the window and back but it did require some act on the part of the drawee bank to take the money out of appellant's deposit before the check could be considered paid. To make applicable appellant's illustration of passing the money out of the window and back we must suppose the following: that on presenting the check the cashier of the bank had retained it and said: "I intend to give you the money, therefore you have it," and hence conclude that the check was paid. This is a *reductio ad absurdum*. The trial court was justified in finding that the Wilder Bank did not pay the check.

No point is made that there was negligence in giving the maker notice of nonpayment of the check.

Appellant received full consideration for the check. The check not having been paid, judgment was properly entered in favor of respondent and the same is affirmed.

Costs awarded to respondent.

Budge, C. J., and Wm. E. Lee and Varian, JJ., concur.