FIRST NATIONAL BANK OF ELWOOD *v.* UNIVERSAL C.I.T. CREDIT CORPORATION.

[No. 19,215. Filed November 16, 1960. Rehearing denied December 19, 1960. Transfer denied October 16, 1961.]

354

*Hugh E. Reynolds, Hugh E. Reynolds, Jr., Locke, Reynolds, Boyd & Weisell,* of counsel, of Indianapolis, *Robert L. Austin* and *Johnson & Austin,* of Anderson, for appellant.

*Leo M. Gardner, Jerry P. Belknap, Eugene C. Miller, Jr., Barnes, Hickam, Pantzer & Boyd,* of counsel, all of Indianapolis, and *William Peck,* of Anderson, for appellee.

KELLEY, J.—Appellee was the payee named in two checks given it by an automobile dealer. Said checks were drawn on appellant bank. On February 5, 1954, appellee endorsed each of said checks "for deposit only" and deposited them in its depository, Merchants National Bank, Muncie, Indiana. The latter named bank forwarded said checks by mail to The Indiana National Bank, of Indianapolis, Indiana, and the latter received the same February 6, 1954.

On the same day, February 6, 1954, said Indiana National Bank forwarded said checks to appellant by mail, together with other items in a cash letter requesting credit in full for the amount of the cash letter and advising that on Tuesday, February 9, 1954, appellant's account with said Indiana National Bank would be charged in the amount of said cash letter, less adjustments, and returned items reported by appellant on that date.

On Monday, February 8, 1954, appellant received the cash letter and said here involved checks by mail and on the same day, February 8, 1954 or the next day, February 9, 1954 credited the said Indiana National Bank with the amount of the said cash letter, including said here involved checks, less a small item of no pertinency in this case. This small non-pertinent item was later returned and will not be further noticed. By letter deposited in the United States mail at Elwood, Indiana, "on or before" February 9, 1954, appellant advised the said Indiana National Bank that it (the appellant) accepted a charge to its account with the said Indiana National Bank of the amount of said cash letter, which included both of said here involved checks.

At the time appellant received said cash letter, including said here involved checks, from said Indiana National Bank, said automobile dealer had insufficient funds on deposit with appellant to pay said checks. Said dealer then told the President of appellant bank that he was getting a loan of sufficient amount to pay said checks. However, said dealer did not deposit in appellant bank sufficient funds to meet and pay said checks. Thereupon, on February 13, 1954 the president of appellant bank returned said checks by mail to said Indiana National Bank, together with a notice that it (appellant) had charged said checks against the ac-

count of said Indiana National Bank because of insufficient funds of the drawer, said automobile dealer.

Said checks and notice were received by said Indiana National Bank on February 15, 1954. Orally, the said Indiana National Bank advised appellee's depository, Merchants National Bank of Muncie, of the return of said checks to it by appellant and, on said February 15, 1954, said Indiana National Bank "mailed" said checks to said Merchants National Bank, of Muncie, together with written advice that the appellant bank was being credited and the said Merchants National Bank was being charged with said checks.

Upon receipt of such advice, said Merchants National Bank, of Muncie, orally advised appellee of the return of said checks and thereafter the account of appellee in said bank was charged with the amount of said returned checks, which said checks were then returned to appellee and were held by it, unpaid, until the trial of the present action.

On the theory that appellant was indebted to appellee by reason of the former's payment of said checks on presentment "by advice of credit," without timely revocation thereof, appellee instituted this action by complaint in three paragraphs. The first paragraph counted upon one of the aforesaid checks in the face amount of $1,653.04 and the second paragraph upon one of said checks in the face amount of $1,316.22. The third paragraph of complaint was predicated upon the theory that the president of appellant bank promised to pay appellee the aggregate sum of both of said checks. No further notice need be taken of said third paragraph of complaint since a finding for appellant thereon was made by the court. Appellant answered said several paragraphs of complaint under the rules and the cause was submitted to the court for trial without a jury.

The court found for appellee on the first and second paragraphs of its complaint and entered judgment for appellee in the total amount of said two checks, namely, $2,969.26.

Appellant supplies us with three main grounds of asserted reversible error. It says, in effect, that said checks were not finally charged by it to the account of the maker, as provided for in §7 of the Bank Collection Code, which is now §18-2507 of Burns' 1950 Replacement, and, hence, said checks were not paid as claimed by appellee; that the acceptance by said Indiana National Bank of the return of said checks and the consequent revocation of the prior credit therefor constituted an agreement by appellee, through its collecting agent, the said Indiana National Bank, that appellant was not required to return said checks during the business day following the receipt thereof by appellant, as provided for in §1 of the 1949 Deferred Posting Act, being now §18-2518 of Burns' 1950 Replacement; and that the trial court erred in sustaining appellee's objection to the introduction by it into evidence of paragraphs 4a, 4b, 4c and 9 through 15 of a stipulation of facts by the parties. The latter evidence was rejected by the court on the ground that it was irrelevant and whether it was so or not depends upon the interpretation and construction placed upon the two aforementioned sections of the statutes.

Said §7 of the Bank Collection Code, enacted in 1929, being §18-2507, Burns' 1950 Replacement, reads as follows:

"Where the item is received by mail by a solvent drawee or payor bank, it shall be deemed paid when the amount is finally charged to the account of the maker or drawer."

The last mentioned section is claimed by appellant to be controlling of the instant question; and that, there-

fore, since appellee failed to show that said checks had been charged by appellant to the account of the maker, the decision of the trial court is contrary to law.

Appellee relies upon said §1 of the Deferred Posting Act being §1, Ch. 74, Acts 1949, Burns' 1950 Replacement, §18-2518, *et seq.*, the title and said §1 of which reads as follows:

"AN ACT relating to the collection, payment and dishonor of demand items by banks and the revocation of credit for, and payment of, such items, and declaring an emergency.

"SECTION 1. That in any case in which a bank receives, other than for immediate payment over the counter, a demand item payable by, ■ at or through such bank and gives credit therefor before midnight of the day of receipt, the bank may have until midnight of its next business day after receipt within which to dishonor or refuse payment of such item. Any credit so given, together with all related entries on the books of the receiving bank, may be revoked by returning the item, or if the item is held for protest or at the time is lost or is not in the possession of the bank, by giving written notice of dishonor, nonpayment, or revocation; provided that such item or notice is dispatched in the mails or by other expeditious means not later than midnight of the bank's next business day after the item was received. For the purpose of determining when notice of dishonor must be given or protest made under the law relative to negotiable instruments, an item duly presented, credit for which is revoked as authorized by this Act, shall be deemed dishonored on the day the item or notice is dispatched. A bank, revoking credit pursuant to the authority of this Act, is entitled to refund of, or credit for, the amount of the item."

In particular, appellant says that (1) said §1 of the Uniform Deferred Posting Act was not designed to "mark" the point at which a check received by mail was "paid" but extended recognition to a custom (we

find no evidence of such asserted custom) of many years among banks to post checks to the maker's account on the day following their receipt, thereby avoiding the common law requirement in many states that such checks had to be returned immediately or consequent liability could attach; (2) that any attempt to apply both said §1 of the Deferred Posting Act and said §7 of the Bank Collection Code to determine the "time" of payment creates an inconsistency between them which can be resolved only by considering (a) that §1 of the Deferred Posting Act impliedly amended said §7 of the Bank Collection Code; or (b) that said §1 of the Deferred Posting Act impliedly repealed said §7 of the Bank Collection Code; or (c) that said Section 7 of the Bank Collection Code determines the "time" of payment of a check received by mail and said §1 of the Deferred Posting Act only determines the "period" within which a drawee bank may return a check received by mail for payment without fear of liability and the collection bank may accept the returned check without fear of liability for negligent delay; and (3) that §7 of the Bank Collection Code deals specifically with the matter of payment of such checks and, therefore, takes precedence over the Deferred Posting Act which is general in its terms.

Appellant further states, with regard to the aforesaid phase (a) and (b) of its point (2), that in Indiana there can be no *implied* "amendment" of a statute, and that there can be an *implied* "repeal" of a statute only when there exists such repugnancy and inconsistency between the repealing act and the act repealed that it must be assumed that the legislature did not intend that both should stand.

It is clear, it seems to us, that there exists no such inconsistency between said particular sections of the

aforementioned acts as that they cannot be readily reconciled and each be given force and effect according to its terms. They may be comfortably considered side by side. To adopt appellant's theory we would be compelled to judicially declare that said §7 of the Bank Collection Code is wholly and completely exclusive in providing a method of evidencing the payment and of the time of payment by a drawee bank of an item it received by mail and that its liability thereon could be irrevocably fixed in no manner other than that therein provided. However, said section simply provides that a mail item shall be deemed (considered) paid by the drawee bank when it is finally charged to the maker's account; but it does not provide nor does its language imply that there is no other way in which a mail item may be evidenced or considered as paid and the time of payment thereof. If, for instance, the legislature, in enacting said §7 of the Bank Collection Code had evidenced its intent, in accord with appellant's construction, by implanting the word "only" between the words "paid" and "when" in said section so that the same would read in this fashion: ". . . it shall be deemed paid (only) when the amount is finally charged to the account of the maker . . .", appellant's contention would attract much greater emphasis.

As we perceive it, a drawee bank, under the existing law in this State, can pay an item received by it by mail in one or both of two ways. It can finally charge the item to the account of the maker, as provided in said §7 of the Bank Collection Code, or it can give unrevoked credit therefor, as provided in said §1 of the Deferred Posting Act. Of course, the bank can do both, it can finally charge the maker's account and also give unrevoked credit therefor. Said §7 of the Bank Collection Code and said §1 of the Deferred Posting

Act each can be given full effect, without any conflict, by simply determining which occurred first, payment of the item by final charge to the maker's account or payment by giving unrevoked credit therefor. In view of our previously expressed opinion that said §7 of the Bank Collection Code is not exclusive in its prescribed manner of payment of mail items received by a solvent drawee bank, we find no reason to hold that the same was amended or repealed by said §1 of the Deferred Posting Act. Nor do we consider that said two sections are in irreconcilable conflict.

It may be properly noticed, also, that if appellant's proposal: that only §7 of the Bank Collection Code is applicable where a drawee bank has taken action with relation to a demand item received by it by mail and that §1 of the Deferred Posting Act possesses the mere effect of fixing the time within which the drawee bank may return such item without liability for negligent delay, is given the judicial stamp of approval, then the door would be open for intolerable delay, confusion and uncertainty in the handling by banks, under the pressure and speed of modern day transactions, of demand items by mail. For instance, a solvent drawee bank could give unconditional advice of credit to the forwarding or collecting bank, as the case may be, for the item received by mail, fail to enter the item on its book as a charge against the account of the maker, and then, at some later time, at its convenience, revoke its advised credit and return the item to the forwarder. It requires no extended factual portrayal to demonstrate the chaos such permitted practice would entail upon the credit balances and collection and payment processes of modern banking institutions. We are not convinced that such result was intended by our legislative body in the enactment of said sections of the aforesaid acts.

It must not be concluded from what we have thus far said that we express any opinion as to the rights or duties of the parties where the drawee bank ■ fails or refuses to take any action with regard to an item received by it by mail. However, it seems settled that the drawee bank may become bound by doing something which is "the equivalent of paying the checks or accepting them as a credit to the account of the remittor." *Guardian National Bank* v. *Huntington County State Bank* (1933), 206 Ind. 185, 187 N. E. 388, 92 A. L. R. 1056.

The facts established by the record in this case show that the appellant was the drawee bank named in said checks and the appellee was the payee named therein. As such drawee bank named therein, appellant received said checks by mail on Monday, February 8, 1954. On that day or the next day, February 9, 1954, it credited the collecting bank, the Indiana National Bank, with the amount of said checks and on said February 9, 1954, advised the said collecting bank of the acceptance of a charge to its (the drawee bank) account in the amount of said checks. The president of the appellant drawee bank relied upon the statement of the maker of said checks that he could get money to "make them good" but the maker did not do so. Finally, on February 13, 1954, appellant undertook to revoke the credit it had given for said checks and returned the same to said Indiana National Bank. Thus it is clear that appellant did not revoke its extended credit for said items within the provided time expressed in said §1 of the Deferred Posting Act. The credit given by appellant for said checks became irrevocable when the midnight deadline provided in said §1 of the Deferred Posting Act passed without any return of the items or the giving of notice of revocation by appellant either in the mails

or "by other expeditious means." Further, the stipulation of the parties states that the appellant "credited the Indiana National Bank with the amount of the cash letter. . . ." The cash letter included the checks here involved. The fair inference permissible to the trial court from said stipulation was that such credit was made *on the books* of the appellant. Also, appellant advised said Indiana National Bank *by letter* that appellant *"accepted"* a charge to its account with said Indiana National Bank of an amount which included said checks. Thus it appears that appellant's credit was given on its books and that its acceptance of the charge to its account was *unequivocal.*

Extended independent research has failed to produce for us a case on the precise question now considered. Nor have the parties presented such. We have already sufficiently determined, we think, that the two pertinent sections, above referred to, are not in conflict and that the proven facts of a particular case constitute the divining rod in determining the controlling statute. There can be no question, it seems to us, under the provisions of said §7 of the Bank Collection Code, that if the drawee bank has charged a mail item to the account of the drawer or maker thereof, such item is deemed paid for all purposes, except, of course, as to the possible rights of the drawee bank against such maker or drawer. The difficulty arises where, as here, there is no evidence that the drawee bank charged such item to the account of the maker but the evidence shows that the drawee bank gave credit for the item on its books and unequivocally, in writing, accepted an offer to charge said item to its account with the collecting bank, without in any way revoking or dishonoring its credit and advice or returning the item itself

before midnight of the next business day after the item was received.

A short look at the historical antecedents to the enactment of the Deferred Posting Act may prove enlightening as to the interpretive effect to be assigned to said Act. In 1908 the Supreme Court of the Commonwealth of Pennsylvania, in *Wisner* v. *First National Bank of Gallitzin* (1908), 220 Pa. 21, 68 A. 955, held that under §§136 and 137 of the Negotiable Instruments Law a bank need not be tortious in its refusal to return the bill within twenty-four hours and that its mere inaction in not returning the bill within twenty-four hours rendered the drawee liable on the bill. Although Pennsylvania afterward amended said law without expressly making its terms applicable to checks, the banks nevertheless generally considered that a drawee bank was liable on a check sent to it for payment if it did not return the check dishonored within twenty-four hours, the same as if it had certified the check. Due to the large number of checks to be processed each banking day and the shortage of bank operating personnel during World War II, it was found that twenty-four hours was not sufficient time within which to investigate the worthiness of each check presented.

As a consequence, banks resorted to the procedure of paying a check at once upon presentation but without posting it to the customer's account until the following day. This practice became known as *deferred posting*. Thereafter, in 1948, for the purpose of establishing uniformity among banks, the American Banking Association introduced a Model Deferred Posting Statute which, within certain specified legal requirements, gave sanction to the said practice adopted by the banks. At least forty-one of the several states of the United States, including Indiana, have adopted either the said Model

Statute or one comparable in general features. The Indiana Statute was enacted in 1949 as ch. 74, Acts 1949. The "midnight deadline," that is, the time within which a received item must be returned if not acceptable, is defined by the code as midnight of the next banking day following the receipt of the item. Our Deferred Posting Act, last above cited, defines it as "midnight of the bank's next business day after the item was received." For more detailed information on the matter just discussed, see Whitney's "The Law of Modern Commercial Practices," §§225 and 226, pages 274 to 278, inclusive.

It thus appears that the very purpose of the Deferred Posting Act was to protect the bank from liability on demand items payable at or through the bank and received by the bank in a manner other than for immediate payment over the counter, until its provisional credit expires unrevoked at midnight of the bank's next business day following receipt of the item. It is difficult to conjure any logical process of reasoning which, under the facts made apparent here, leads inescapably to any other conclusion than that a bank which fails to embrace the protective provisions afforded by the Deferred Posting Act by not revoking its provisional credit or returning the item within the time and substantially in the manner provided in the Act must be held to thereby bind itself to pay the item.

In a rather recent case, *General Finance Corporation of Florida* v. *Central Bank and Trust Company et al.* (1959), U. S. C. A. Fifth, 264 F. 2d 869, the court was considering the construction of §676.55 F. S. A. in an action by the payee of a check against the drawee bank and the collecting bank on the ground that the drawee bank had paid the check under said statute by holding the same beyond the day after it was received by the drawee and that the collecting bank became liable

by seeking to charge the paid item against appellant's (complaint's) account. The court referred to a contention by appellee that the mentioned statute was but a deferred posting statute and that the entry by the drawee bank of a credit to the collecting bank would amount to "irrevocable final payment." In part the court said:

". . . the act which gave the right to deferred posting also put a limit on the time during which the delay could be extended. This limit was stated in the Act in terms that may be restated as follows: 'The immediate entry of a credit, which would be final payment but for this act, shall no longer be final payment *if the drawee bank recalls the credit before the end of the day following the day of receipt of the item;* otherwise, the passage of such time accompanied by *retention of the item by the drawee does constitute final payment*' ". (Emphasis supplied.)

In *Keller* v. *Frederickstown Savings Institution* (1948), 193 Md. 292, 66 A. 2d 929, the court, considering the effect of a stop payment where the drawee bank had neither paid the check nor accepted it for payment, made the following statement, significant here:

". . . If a check is sent through the mail by a bank, for collection or payment to the bank on which it is drawn, and that bank charges the check on its books to the account of the drawer of the check *or gives credit for it on its books to the account of the payee bank, this is equivalent to payment and the check is dead.*" (Emphasis supplied.)

During the oral argument appellant cited and subsequently filed as additional authority the case of *Fidelity and Deposit Company of Maryland* v. *Idaho Bank and Trust Company* (1959), U. S. D. C., D. Idaho, E. D. 173 F. Supp. 70, in support of its

contention that under the provisions of said §7 of the Bank Collection Code no liability attached to appellant until it finally charged the items to the account of the maker. There are several reasons why that case seems without impelling influence. The opinion comes from no higher authority than a Federal District Court, which is not a court of last resort. "A decision of a court not of last resort is usually not of high persuasive authority." Wambaugh's Study of Cases, §63, page 62.

The circumstances, the relationship of the parties and the statute considered by the court in that case were not similar to those in the instant case before us. The court there had before it a situation of a "direct" forwarding of the checks by the original depository bank to the drawee bank "for collection." By reason thereof, the court adopted the theory proposed by the assignee plaintiff that under a charge of negligent performance of its duties as a collecting bank, the drawee bank sustained a dual agency status, that is, it was a collecting agent for the forwarder as well as a paying agent for the drawer. It then held that there was nothing in the Bank Collection Code of Idaho "particularly inconsistent with the application" of that theory.

With relation to three counts of the complaint sought to be dismissed by the defendant, the court considered §137 of the Negotiable Instruments Act, not involved in our present action, and in reliance upon *Davison* v. *Allen* (1929), 47 Idaho 405, 276 P. 43, and Vol. 1, Paton's Digest, 1940, Acceptance, §7:2(11), p. 16, concluded that under the provisions of §7 of the Idaho Bank Collection Code, the *"mere retention"* of checks received by a drawee bank for collection and payment for a period in excess of 24 hours "does not constitute an acceptance thereof." In this connection two things are to be noted: (1) No mention

was made by the court of any statute of Idaho such as §1 of the Deferred Posting Act of this State, above quoted, and what the decision of the court would have been in the face of such Act is, of course, unknown; and (2) the *Davison* v. *Allen* case, *supra,* relied upon by that court, holds in accordance with our view in the present case, namely, that "affirmative action" by the drawee bank will bind it. The said Davison case "indicated" that no liability should attach to the drawee bank *until* such drawee bank *"had taken some affirmative action in regard thereto"* (our emphasis), such as "crediting the account of the remitting bank."

We have already demonstrated that the appellant here had taken affirmative action with relation to the checks herein involved and was bound thereby. The aforesaid Idaho case, relied upon by appellant, is not controlling or persuasive authority for its position because (1) said authority gave no consideration to the effect of a provision such as is found in §1 of the Deferred Posting Act of this State, and (2) it had before it no circumstance, as is found in the case before us, beyond the fact of "mere retention" of the checks by the drawee bank. We find nothing in said Idaho case, cited and relied upon by appellant, to warrant a change in the views we have expressed herein. On the contrary, we are inclined to believe that said Idaho case supports our position even though it had before it no provision of the Deferred Posting Act such as we have in this State.

The case here presented was not elaborately tried, the parties seemingly being content to rest the case on the construction and application of the aforementioned particular sections of the Bank Collection Code and the Deferred Posting Act. No reliance upon nor evidence relative to any possible custom of the Indiana banks concerning the matters proposed appears in the

record. No evidence as to any action taken or advice given by the Indiana National Bank, as the collecting agent, between February 9, 1954, the date it received advice of the acceptance by appellant of a charge for the involved checks and February 15, 1954, the date it received the checks and notice by appellant of the charge of said checks against the account of said Indiana National, appears in the record as shown by the briefs of the parties. However, we are convinced that the conduct of the appellant, as disclosed by the record facts in this case, constituted final irrevocable payment of the two checks mentioned herein, the same as if cash had passed over the counter. The time for the return or notice of revocation of the checks having expired under the provisions of said §1 of the Deferred Posting Act, payment of the said checks became absolute, complete and irrevocable.

The appellant having become indebted to appellee by reason of its (appellant's) payment of said checks, as we have previously held, the agency, for the purpose of collection, of the Indiana National Bank came to an end and its only remaining duty was to remit the proceeds of such collection to appellee's depository, the Merchant's National Bank, of Muncie. It is unimportant here as to the method it might have utilized in remitting such proceeds to said Merchants National Bank. There remained nothing that either appellee, the depository, or the collecting bank could do to revive the checks which became dead upon appellant's final payment thereof. It follows that appellant's contention that the subsequent alleged action of the collecting bank and appellee constituted an agreement relieving appellant of its liability, or operated as a ratification of appellant's act in attempting to return the checks and thereby destroy the extended credit, is without substance.

We do not believe that it is necessary to now say whether or not the court was correct in rejecting the particular paragraphs of the stipulation of the parties complained of by appellant. We have carefully considered each one of the same and are of the opinion, in view of the conclusion we have already reached, that their admission could not have served to change the result reached by us. While we are not inclined to lend our approval to the rejection into evidence by the court of parts of a stipulation entered into by the parties (see *Schreiber* v. *Rickert et al.* (1943), 114 Ind. App. 55, 58, 50 N. E. 2d 879) on the sole ground of irrelevancy, the rejected paragraphs would not have helped appellant's position. They dealt with the size of the deposit of appellant's customer, the maker of the checks; that appellant did not charge the checks against the customer's account; the dates on which appellant's bank was closed; that appellee had an agreement with the maker of the checks to buy this paper covering the sales of his automobiles; that appellee bought two contracts from said automobile dealer for which appellee paid the latter and that upon ascertaining that said contracts, in fact, covered wrecked automobiles appellee demanded that said dealer repurchase them; that the checks herein sued upon were given to appellee by the dealer for such repurchase; that appellee repossessed the automobile covered by one of said contracts, sold it for $600.00 and applied the net of $572.50 *to other indebtedness* of said dealer to appellee; that the said dealer was adjudicated a bankrupt but was denied a discharge therefrom; that appellee filed, but later dismissed, a claim in said bankruptcy on said contracts; and, finally, that the said automobile dealer had originally made a written guarantee to pay his present and future obligations to appellee. We do not perceive that any of said

matters could have exerted any influence on the result arrived at by the court nor does it appear to us that appellant was harmed in any way by the rejection into evidence of the same.

We have considered each error urged by appellant and find no merit in any of them. Appellant has not shown error by the record and the judgment must be affirmed.

Judgment affirmed. Bierly, C. J., Gonas, Smith, J. J., concur.

NOTE.—Reported in 170 N. E. 2d 238.